# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| HOME CARE ASSOCIATION OF AMERICA, *et al* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:14-cv-00967 |
| | ) | |
| DAVID WEIL, *et al* | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR EXPEDITED PARTIAL SUMMARY JUDGMENT

*/s/ Maurice Baskin*_____

Maurice Baskin (D.C. Bar No. 248898)
Littler Mendelson, P.C.
1150 17th St., N.W.
Washington, D.C. 20036
Telephone: 202.772.2526
Fax:   202.318.4048
mbaskin@littler.com

William A. Dombi
D.C. Bar No. 445832
Center for Health Care Law
228 Seventh Street, SE
Washington, D.C. 20003
Telephone: (202) 547-5262
Facsimile:  (202) 547-7126
wad@nahc.org

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF THE CASE AND FACTS ............................................................. 3

    A.   STATUTORY AND REGULATORY FRAMEWORK PRIOR TO
         THE NEW RULE ............................................................................................ 3

    B.   THE DEPARTMENT'S NEW RULE .............................................................. 5

III.  JURISDICTION AND VENUE .................................................................................. 6

IV.   STANDING ................................................................................................................ 7

V.    STANDARD FOR REVIEW ..................................................................................... 9

VI.   ARGUMENT ............................................................................................................ 11

    A.   THE NEW RULE IMPERMISSIBLY EXCEEDS THE
         DEPARTMENT'S STATUTORY AUTHORITY UNDER THE FLSA............ 11

         1.   The New Rule Conflicts With The Plain Language Of The FLSA ......... 11

         2.   The New Rule Conflicts With The Legislative History Of The
             FLSA .................................................................................................... 13

    B.   THE NEW RULE FAILS TO PROVIDE AN ADEQUATE
         JUSTIFICATION FOR THE DEPARTMENT'S REVERSAL OF
         LONGSTANDING  ENFORCEMENT OF THE FLSA EXEMPTIONS. ......... 16

VII.  CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Altman v. SEC,*
  666 F. 3d 1322 (D.C. Cir. 2011) ......................................................................16

*American Bar Ass'n v. FTC,*
  430 F. 3d 457 (D.C. Cir. 2005) ..........................................................................9

*American Petroleum Institute v. Environmental Protection Agency,*
  706 F. 3d 474 (D.C. Cir. 2013) ..........................................................................9

*American Petroleum Institute v. U.S. EPA,*
  52 F. 3d 1113 (D.C. Cir. 1995) ..........................................................................9

*Cal. Indep. Sys. Operator Corp. v. FERC,*
  372 F. 3d 395 (D.C. Cir. 2004) ..........................................................................9

*Chamber of Commerce v. NLRB,*
  721 F. 3d 152 (4th Cir. 2013) ............................................................................9

*Chevron USA, Inc. v. NRDC,*
  467 U.S. 837 (1984) ...........................................................................................9

*City of Arlington v. FCC,*
  133 S. Ct. 1863 (2013) .......................................................................................9

*Commodity Futures Trading Comm'n v. Schor,*
  478 U.S. 833 (1986) .........................................................................................16

*Creekstone Farms Premium Beef, LLC v. Department of Agriculture,*
  539 F. 3d 492 (D.C. Cir. 2008) ........................................................................16

*Echostar Satellite LLC v. Federal Communications Comm'n,*
  704 F. 3d 992 (D.C. Cir. 2013) ..........................................................................9

*FCC v. Fox TV Stations, Inc.,*
  556 U.S. 502 (2009) ..............................................................................10, 17, 20

*Hunt v. Washington State Apple Advertising Commission,*
  432 U.S. 333 (1977) ...........................................................................................7

*Long Island Care at Home Ltd. v. Coke,*
  551 U.S. 158 (2007)..............................................................................4, 5, 15, 16, 18

i

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)……………………………………………………………………..9

*Motion Picture Ass'n of America, Inc. v. FCC,*
    309 F. 3d 796 (D.C. Cir. 2002) ...................................................................................9

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,*
    463 U.S. 29 (1983)...............................................................................................10, 17

*National Association of Manufacturers v. NLRB,*
    717 F. 3d 947 (D.C. Cir. 2013) ...................................................................................9

*NLRB v. Bell Aerospace v. NLRB,*
    416 U.S.267 (1974)......................................................................................................16

*Public Citizen, Inc. v. HHS,*
    332 F.3d 654 (D.C. Cir. 2003) ..................................................................................10

*Railway Lab. Executives Assn. v. National Mediation Board,*
    29 F. 3d 655 ..........................................................................................................9, 11

*Sebelius v. Auburn Regional Med. Ctr.,*
    133 S. Ct. 817 (2013)..................................................................................................16

*Southern Cal. Edison Co. v. FERC,*
    116 F.3d 507 (D.C. Cir. 1997)...................................................................................10

*Welding v. Bios Corp.,*
    353 F. 3d 1214 (10th Cir. 2004) ...........................................................................14, 15

**STATUTES**

5 U.S.C. §§ 701-706 ...............................................................................................7, 8

5 U.S.C. § 702 .................................................................................................................6

5 U.S.C. § 706 .................................................................................................................7

28 U.S.C. §1331................................................................................................................6

28 U.S.C. § 1391(c) .........................................................................................................6

28 U.S.C. § 2201...............................................................................................................7

28 U.S.C. § 2202...............................................................................................................7

29 U.S.C. § 207.............................................................................................................3, 14

29 U.S.C. § 213(a)(3)......................................................................................................13

29 U.S.C. § 213(a)(15)................................................................................1, 4, 6, 12, 13, 14

29 U.S.C. § 213(b)(3) .........................................................................................................14

29 U.S.C. § 213 (b)(21)…………………………………………………………1, 4, 6, 12, 13, 14

## OTHER AUTHORITIES

40 Fed. Reg. 7405 (1975) ....................................................................................................4

76 Fed. Reg. 81190 (Dec. 27, 2011) ...................................................................................5

29 C.F.R. Part 552, 78 Fed. Reg. 60454 (Oct. 1, 2013)....................................................1

78 Fed. Reg. at 60442-43 ..................................................................................................19

78 Fed. Reg. at 60458 ........................................................................................................18

78 Fed. Reg. at 60481 ........................................................................................................13

78 Fed. Reg. at 60454 ..........................................................................................................5

78 Fed. Reg. at 60455 ........................................................................................................17

119 Cong. Rec. 24,797 (1973) ...........................................................................................14

Direct Care Job Quality Improvement Act of 2011, H.R. 2341 and S.1273 (112th Cong.
  2011…………………………………………………………………………......5, 16

Direct Care Workforce Empowerment Act of 2013, H.R. 5902 and S. 3696 (113th Cong.
  2013)…………………………………………………………………………5, 16

Fair Home Health Care Act of 2007, H.R. 3582 and S. 2062 (110th Cong. 2007)...................5, 16

Op. Ltr. WH-368, 1975 WL 40991 (Nov. 25, 1975) ...................................................................4

WH Advisory Memorandum No. 2005-1 (Dec. 1, 2005)…………………………………………4

## I.      INTRODUCTION

Plaintiffs are filing this memorandum in support of their Motion for Expedited Partial Summary Judgment as to Counts I and II of Plaintiffs' Complaint seeking to set aside a new rule issued by officials of the Wage and Hour Division of the U.S. Department of Labor (hereafter "Defendants" or "the Department").   The new rule, entitled "Application of the Fair Labor Standards Act to Domestic Service; Final Rule," 29 C.F.R. Part 552, 78 Fed. Reg. 60454 (Oct. 1, 2013) (hereafter the "new Rule"), revises and supersedes longstanding regulations implementing the 1974 amendments to the Fair Labor Standards Act (the "FLSA" or the "Act").   In the 1974 amendments, Congress exempted employees providing "companionship services" to elderly and disabled individuals from the minimum wage and overtime provisions of the Act, 29 U.S.C. § 213(a)(15).   The new Rule also revises and supersedes regulations implementing Congress's exemption from the Act's overtime provisions for employees providing live-in domestic services, 29 U.S.C. § 213(b)(21).

As further explained below, the new Rule dramatically departs from the plain language of the statutory minimum wage and overtime exemptions and exceeds the scope of the Department's statutory  authority by declaring that third party employers of employees covered by the exemptions "may not avail themselves" of their employees' exempt status.   By this unlawful attempt to deny third party employers their right to rely on the Act's exemption provisions, the new Rule illegally discriminates in the application of the FLSA exemptions based on the identity of the employer, adversely impacting those citizens who lack the physical or

mental capacity to take on the difficult role of an employer.[1]

The new Rule will have a deeply destabilizing impact on the entire home care industry, and will adversely affect access to home care services for millions of the elderly and infirm. The new Rule will lead to increased institutionalization of those needing home care, as many will no longer be able to obtain the currently available levels of access to affordable, quality care in their homes. Others will be forced to accept care from multiple caregivers instead of one trusted individual, a particular hardship for individuals with dementia, as employers will be forced to reduce work hours to avoid overtime costs.    For similar reasons, the new Rule will also adversely impact many home care workers and will increase staff turnover to the detriment of consumers. Finally, the new Rule will increase the cost of privately paid home care while adding to the burdens imposed on the country's Medicare and Medicaid financial systems.

Absent judicial intervention, the new Rule is scheduled to go into effect on January 1, 2015. For this reason, the parties have agreed to an expedited briefing schedule.   Plaintiffs' respectfully request expedited consideration of this motion upon completion of the briefing.  For the reasons more fully set forth below, the Rule should be declared unlawful and set aside prior to its effective date.

---

[1] The new Rule further departs from the statute and Congressional authority by significantly narrowing the types of companionship services that will be considered exempt for the few remaining employees who are not employed by third parties.  By stipulation, the parties have reserved such issues for later consideration by the Court, if necessary.  The present Motion concerns only the "third party employer" issue addressed in Counts I and II of Plaintiff's Complaint.

## II.     STATEMENT OF THE CASE AND FACTS[2]

### A.     STATUTORY AND REGULATORY FRAMEWORK PRIOR TO THE NEW RULE

Under the FLSA, the obligation of employers to pay certain employees overtime for hours worked over 40 in a week derives from Section 207 of Title 29.[3]  The obligation of an employer to pay overtime under Section 207, however, is cancelled by Sections 213(a) and (b) of Title 29, with respect to "any employee" identified in one of the several dozen exemption provisions of that Section.  As stated at the outset of Section 213(a) with respect to any such exempt employee, "the provisions of … section 207 of this title *shall not apply*." (emphasis added). An identical provision appears at the outset of Section 213(b) which again nullifies the provisions of Section 207 as to any employer whose employees are exempted by any provision of Section 213(b).[4]

Section 13(a)(15) of the FLSA, 29 U.S.C. § 213(a)(15), exempts from the overtime compensation requirements of the Act "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."

---

[2] Pursuant to LCvR 7(h), because this case is an APA challenge that is to be decided based on the agency's published rulemaking proceedings, the parties are not required to file statements of undisputed material facts as in other summary judgment motions.

[3] The operative provision of Section 207 states that "no employer shall employ any of his employees [engaged in commerce] … for a workweek longer than forty hours unless such employee receives compensation for his employment ins excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.

[4] The provisions of Section 213(a) also cancel the minimum wage requirements of Section 206 of the Act along with the overtime provisions of Section 207.  Section 213(b) only nullifies the overtime requirements of Section 207 and does not affect minimum wages.

Section 13(b)(21) of the Act, 29 U.S.C. § 213(b)(21), further exempts from the overtime compensation requirements of the Act "any employee who is employed in domestic service in a household and who resides in such household." Nowhere in these or any other provisions of the Act did Congress authorize the Department to require some employers, but not others, to pay overtime pay to employees who are otherwise exempt from the Act's requirements.

For the past four decades, prior to the new Rule, the Department implemented the foregoing provisions of the Act by promulgating regulations that expressly included third party employees within the scope of the statutory exemption. *See* 40 Fed. Reg. 7405 (1975). Thus, Section 552.109 of the Department's rules expressly stated that the exemption was available to "any employee," including employees of third party employers, both as to companionship services and live-in domestic services. In the Department's own words, these regulations were "more consistent" with the statute than proposed alternatives that would have excluded employees of third party employers from the exemption. *See* 40 Fed. Reg. 7405 (1975); *see also* Op. Ltr. WH-368, 1975 WL 40991 (Nov. 25, 1975).

The Department rejected various efforts, both internal and external, to change the regulations over the next 37 years. WH Advisory Memorandum No. 2005-1 (Dec. 1, 2005), *available at* www.dol.gov/whd/FieldBulletins/AdvisoryMemoranda2005.pdf (reviewing opposition to the longstanding rules and explaining why the Department's interpretation at that time remained "authoritative."). As the Department further stated in defending its regulations to the U.S. Supreme Court, "[i]f the companionship services exemption to the FLSA was narrowed to only those employees hired directly by a family member or the head of household, then the exemption would encompass only 2% of employees providing companionship services in private homes." *See Long Island Care at Home Ltd. v. Coke*, Brief for the United States as *Amicus*

4

*Curiae* (U.S. 2007).  The Supreme Court agreed with the Department's position and upheld the Department's current regulations in the *Coke* case, at 551 U.S. 158 (2007).

In response to the Supreme Court's decision in *Coke*, several bills were introduced in Congress seeking to overrule it. *See* "The Fair Home Health Care Act of 2007, H.R. 3582 and S. 2062 (110th Cong. 2007); "The Direct Care Job Quality Improvement Act of 2011," H.R. 2341 and S. 1273 (112th Cong. 2011); and "The Direct Care Workforce Empowerment Act of 2013," H.R. 5902 and S. 3696 (113th Cong. 2013). None of these bills garnered a sufficient number of sponsors to reach the floor of either house of Congress.  Meanwhile, Congress has amended the FLSA on numerous occasions since 1974 and has chosen not to modify the Department's longstanding application of the exemptions at issue here

## B.    THE DEPARTMENT'S NEW RULE

Notwithstanding the Supreme Court's 2007 decision, the Department published a Notice of Proposed Rulemaking (NPRM) in the Federal Register on December 27, 2011, in effect proposing to adopt the position excluding third party employers from access to the companionship employee exemption on essentially the same grounds that the Department had so recently rejected and opposed before the Court. 76 Fed. Reg. 81190 (Dec. 27, 2011).  The NPRM proposed to further require third party employers to treat domestic live-in employees as if they are not otherwise exempt under the Act.

Each of the Plaintiffs and many other entities filed comments in opposition to the proposed Rule.[5]  Nevertheless, the Department proceeded to issue the Final Rule on October 1,

---

[5] *See, e.g.,* Administrative Record Comments of the National Private Duty Association (subsequently renamed the Home Care Association of America) dated March 21, 2012; Comments of the International Franchise Association dated March 20, 2012; Comments of the National Association for Home Care & Hospice dated March 21, 2012, all of which will be included in the Joint Appendix of the parties.  In addition, Plaintiffs funded and submitted detailed economic analyses of the proposed Rule demonstrating the Rule's likely adverse impact on the elderly and disabled, many companion and live-in employees, and many small business employers.  See "Companionship Services Exemption Survey," Navigant

2013, with little change from the proposed Rule. 78 Fed. Reg. 60454. Most pertinent to the present challenge, the Department made final its proposal stating that "[t]hird party employers of employees engaged in companionship services with the meaning of Section 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services." Section 552.109(a). The Final Rule further declared that "[t]hird party employers of employees engaged in live-in domestic service employment within the meaning of Section 552.102 may not avail themselves of the overtime exemption provided by section 13(b)(21) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services." Section 552.109(c).[6]

Significantly, the Department did not purport to change the definition of "employee" or any other term appearing in the statutory exemptions in order to achieve the result of excluding employees of third party employers from the Act's exemptions, but instead imposed an unauthorized minimum wage and overtime requirement on *employers* (and joint employers) solely on the basis of their "third party" status. *Id*. In other words, under the plain language of the statute as interpreted by the new Rule, employees of third party employers falling within the provisions of Section 213(a)(15) and 213(b)(21) remain exempt from the overtime requirements of Section 207 of the FLSA, but their employers may not "avail themselves" of these exemptions.

---

International (Jan. 11, 2012); and "Economic Impact of Eliminating the FLSA Exemption for Companionship Services," HIS Global Insight (Feb. 21, 2012).

[6] Live-in home care services are comparable to the services currently defined as "companionship services" but entail more working hours in a given day because of the level of infirmity of the client. Under the Defendants' new rule, third party employers of live-in caregivers will be obligated to pay overtime compensation to employees who are otherwise exempt from overtime under the Act, while live-in caregivers solely employed by the person in care will not be paid overtime by their employer.

III.    **JURISDICTION AND VENUE**

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 (Federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"). Venue is proper in this Court under 28 U.S.C. § 1391(c) in that (i) Defendants reside in the District of Columbia, and (ii) a substantial part of the events giving rise to this claim occurred in the District of Columbia. This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706.

IV.    **STANDING**

Plaintiffs are trade associations for third party providers of private duty/private pay home care services for seniors and individuals with disabilities, along with an association representing franchise systems of such third party providers, including non-medical home care services. Plaintiffs collectively represent thousands of member companies and organizations that employ millions of caregivers throughout the United States.  Plaintiffs have standing to pursue this action on behalf of their members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief

requested requires the participation of Plaintiffs' individual members. *See* Affidavit of William Dombi, attached to this Motion.

Plaintiffs' members would otherwise have standing to sue in their own right because they will suffer imminent and irreparable harm under the new Rule, unless the Rule is declared unlawful and enjoined by this Court. Absent judicial relief, Plaintiffs' members will be required to spend many hours and many dollars that they can ill afford to spend in efforts to come into compliance with the new Rule's unlawful and unprecedented overtime requirements for workers who are supposed to be exempt from such requirements under the Act. (Dombi Aff. at ¶ 4).

The interests at stake are germane to Plaintiffs' principles, which include the mission of advancing and protecting the ability of home care providers to succeed as business organizations and to provide high quality home care services to consumers. The new Rule unlawfully imposes burdensome and costly new overtime requirements on Plaintiffs' members, many of which are small businesses that can least afford the significant new burdens being imposed by the new Rule. (Dombi Aff. at ¶ 5).

The claims asserted and relief requested by Plaintiffs do not require participation of Plaintiffs' members, because Plaintiffs' Complaint is a facial challenge to the new Rule based upon the Rule's unlawful departure from the statutory authority delegated by Congress under the Act. The Complaint also challenges the arbitrary and capricious nature of the new Rule, based upon the failure of the Department to provide adequate explanation of its reversal of four decades of policy implementing the Act's requirements. The Complaint is entirely based on principles of law and the Administrative Record and thus requires no individual home care agency participation. (Dombi Aff. at ¶ 6).

The foregoing facts, combined with the regulatory impact statement contained in the new Rule itself,[7] clearly establish Plaintiffs' injury in fact, directly attributable to the new Rule, which will be redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

## V.    STANDARD FOR REVIEW

The Department's new Rule is subject to review under the standards set forth in *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984). *See also City of Arlington v. FCC*, 133 S. Ct. 1863 (2013).   Under *Chevron* Step I, the Court asks "whether Congress has directly spoken to the precise question at issue." *Id*. at 842.  If Congress has spoken, then that is the end of the analysis, and the Court "must give effect to the unambiguously expressed intent of Congress." *NAM*, 846 F. 3d at 43.  No deference is shown to the governmental Defendants under this Step. *Id*.

In applying *Chevron* Step I, courts have further held that Congressional silence as to a particular delegation of power does not allow a court to "presume a delegation of power" to a federal agency. *See Railway Lab. Executives Assn. v. National Mediation Board*, 29 F. 3d 655 (D.C. Cir. 1994 (*en banc*) (warning against "presum[ing] a delegation of power from the absence of an express withholding of such power."). *See also American Petroleum Institute v. Environmental Protection Agency*, 706 F. 3d 474 (D.C. Cir. 2013); *American Bar Ass'n v. FTC*, 430 F. 3d 457 (D.C. Cir. 2005), *Chamber of Commerce v. NLRB*, 721 F. 3d 152, 159 (4th Cir. 2013) (Finding "support in our precedent" for the proposition that "[W]e should invalidate the … rule unless we find that Congress intended to delegate to the [agency] the power to issue it."); *see also National Association of Manufacturers v. NLRB*, 717 F. 3d 947, 966 (D.C. Cir. 2013)

---

[7] Though severely understated, the Department's impact statement concedes that the new Rule will impose hundreds of millions of dollars of direct costs on employers, along with a variety of non-economic costs. See 78 Fed. Reg. at 60505-07 ("Summary of impacts").

(majority concurring opinion) ("An agency, we have stated, is bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.").[8]

As the D.C. Circuit has further observed:  "General rulemaking authority," although facially broad, "does not mean that the specific rule the agency promulgates is a valid exercise of that authority." *Colo. River Indian Tribes*, 466 F.3d at 139 (quoting *Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993)). The court further stated that an agency is "bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.' " *Id*. at 139-40 (quoting *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994)).

Under *Chevron* Step II, the Court may defer to the Defendants' application of the statute, but only if it is a permissible and reasonable construction of the law.  *Id*. at 844; *see also Public Citizen, Inc. v. HHS*, 332 F.3d 654, 659 (D.C. Cir. 2003): *Southern Cal. Edison Co. v. FERC*, 116 F.3d 507, 511 (D.C. Cir. 1997) (deference is owed to an agency only if its construction is "reasonable" in light of the statutory text, history, and purpose).

Finally, it is important to note that the challenged rule in this case reverses an agency's interpretation of FLSA exemptions that has been in place for nearly 40 years. In such circumstances courts have uniformly held that the agency bears the burden to explain and justify its reversal of policy.  *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 41 (1983) ("[A]n agency changing its course by rescinding a

---

[8] The foregoing citations are merely representative of a long line of authority in the D.C. Circuit adhering to the court's *en banc* refusal to presume a delegation of authority in the *Railway Labor Executives* case. *See, e.g., Echostar Satellite LLC v. Federal Communications Comm'n,* 704 F. 3d 992 (D.C. Cir. 2013); *American Library Association,* 406 F. 3d 689 D.C. Cir. 2005); *Motion Picture Ass'n of America, Inc. v. FCC,* 309 F. 3d 796, 801 (D.C. Cir. 2002); *Cal. Indep. Sys. Operator Corp. v. FERC,* 372 F. 3d 395, 399 (D.C. Cir. 2004); *American Petroleum Institute v. U.S. EPA,* 52 F. 3d 1113 (D.C. Cir. 1995).

rule is obligated to supply a reasoned analysis for the change beyond that which may be required

when an agency does not act in the first instance."); *see also FCC v. Fox TV Stations, Inc.*, 556

U.S. 502, 503 (2009) (requiring agency reversing course to demonstrate to a court's satisfaction

that the new policy is "permissible under the statute," that "there are good reasons for it," and

that "the agency believes it to be better [than the old policy]").[9]

## VI.    ARGUMENT

### A.    THE NEW RULE IMPERMISSIBLY EXCEEDS THE DEPARTMENT'S STATUTORY AUTHORITY UNDER THE FLSA.

#### 1.    The New Rule Conflicts With The Plain Language Of The FLSA

Under *Chevron*, as discussed above, a reviewing court must first consider whether

Congress intended to delegate authority to an agency to promulgate a challenged rule.   *See*

*Railway Lab. Executives Assn. v. National Mediation Board*, 29 F. 3d 655 (D.C. Cir. 1994) (*en*

*banc*) and the numerous D.C. Circuit cases reaffirming that holding cited above.   In  the  present

case, the new Rule is in direct conflict with the plain language of the FLSA, and there is no

statutory authority whatsoever for the Department to deny employers the right to "avail

themselves" of those exemptions from the Act's overtime requirements that are plainly

applicable to their employees.

As noted above, the sole obligation of employers to pay overtime for hours worked over

40 in a week by any of their employees derives from 29 U.S.C. § 207. That obligation is

---

[9] In the *Fox* case, the Court held that an agency bears an even higher burden of justification for reversal of a longstanding policy where the reversal "rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account. In such cases, … a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." 556 U.S. at 515-16.  As further discussed below, such contradictory facts and reliance interests are present in this case, heightening the agency's burden of justifying its reversal of longstanding policy.

unequivocally nullified by Section 213 of Title 29, with respect to "any employee" listed in the exemption provisions thereof.  As stated at the outset of Section 213(a) with respect to any exempt employee, "the provisions of … section 207 of this title *shall not apply.*" (emphasis added).

Therefore, once an employee is identified by the statute as exempt from overtime under Section 213, no employer of such an employee can be required by the Department to pay overtime to that employee under the provisions of section 207.   In the absence of further Congressional action, the Department does not have any authority to restrict a class of employers from "availing themselves" of an exemption listed in Section 213.   Indeed, the word "avail" does not appear anywhere in the FLSA and certainly does not modify any class of employers to whom Section 207 (or 213) applies.  Because Section 213 cancels Section 207 in its entirety as to all employers whose employees fall within Section 213's exemptions, there is nothing that employers need to "avail themselves" of.  They simply do not have any obligations to pay overtime to any employees who fall within the express provisions of Section 213, by virtue of that Section's cancellation of the application of Section 207.

It is equally plain that the employees described in the challenged provisions of the new Rule (sections 552.109(a) and (c)) fall within one or both of the exemptions identified in Plaintiffs' Complaint, 29 U.S.C. § 213(a)(15) and/or § 213(b)(21). Section 213(a)(15) exempts "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." Section 213(b)(21) further exempts "any employee who is employed in domestic service in a household and who resides in such household."  There is no language in either statutory exemption that limits the type of *employers*

who may "avail themselves" of these exemptions. Rather each of the exemptions applies to "any employee" otherwise meeting the terms of the exemption language.

It is certainly true that the exemption of companionship service employees in Section 213(a)(15), though not the live-in exemption under Section 213(b)(21), authorizes the Department to "define and delimit" the terms of the Section.[10]   But that is not what the Department has done in the new Rule.   The new Rule does not define or delimit the term "employee" or any other term used in Section 213(a)(15).   Instead the new Rule purports to exclude a class of *employers* from "availing themselves" of the otherwise plain language of the statutory exemption.   The Department lacks any authority to create such an exclusion of employers under the Act.   Put another way, as shown in the textual analysis of Section 213 above, because the Department has not "redefined or delimited" the employees who are otherwise identified as exempt by Section 213(a)(15), Section 207's overtime obligations simply do not apply to the employers of such employees. For this reason alone, the challenged Rule must be set aside.[11]

## 2.        The New Rule Conflicts With The Legislative History Of The FLSA

When Congress enacted the companionship services exemption in 1974, the legislators well understood what language was needed to exclude application of the exemption to third-party employment; yet Congress chose <u>not</u> to exclude any employers from the exemption in the

---

[10] The Department claims that its new Rule is an exercise of the authority delegated by this provision of Section 213(a)(15), while ignoring the absence of any such authority in Section 213(b)(21). 78 Fed. Reg. at 60481.

[11] It is thus arguably unnecessary to reach the larger issues in this case concerning the authority of the Department to define and delimit the employees eligible for exemption under Section 213(a)(15), because the *method* chosen by the Department to impose overtime obligations on third party employers of otherwise exempt employees is both unprecedented and unlawful.  Out of an abundance of caution, however, Plaintiffs will further show below that the new Rule would be inconsistent with legislative intent to exempt the employees of third party employers, even if the Department had chosen a lawful method of reinterpreting the scope of the FLSA exemptions at issue.

Act.  By contrast, in several other exemption provisions of Section 213, Congress limited the classes of employers whose employees could fall within the exemption. *See, e.g.*, 29 U.S.C. § 213(a)(3) (exemption for "any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit education conference center"); 29 U.S.C. § 213(b)(3) ("any employee of a carrier by air"); 29 U.S.C. 207(i) ("any employee of a retail or service establishment").  Again, Congress included no similar restriction of the class of employers whose employees are exempt under Section 213(a)(15) or 213(b)(21).

Congress did not similarly limit the scope of the companionship services or live-in domestic services exemptions because the purpose of these exemptions was to keep such services affordable for the families of the elderly and disabled, regardless of the identity of the employer of the service providers. Numerous statements in the Congressional Record establish this Congressional intent.  *See* 119 Cong. Rec. 24,797 (1973) (statement of Sen. Dominick); *Id*. at 24,798 (statement of Sen. Johnston); *Id*. at 24,801 (statement of Sen. Burdick).[12]  Conversely, there were no statements in the Congressional record that the issue of affordability was limited to situations where caregiving was paid for directly to the employee rather than through a third party employer. In addition, closely related to the Congressional concern over increased costs, the legislative history of the companionship exemption shows that Congress created it in order "to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." *See Welding v. Bios Corp.*, 353 F. 3d 1214, 1217 (10th Cir. 2004).

---

[12] During the Senate floor debate on the 1974 amendment, Senator Dominick approvingly read into the record the following definition of "private household worker" written by the Department in 1973: "The term 'private household workers" includes all workers 14 years and older who work for wages, including pay-in-kind, in or about a private residence and are employed by: (1) a member of the household occupying that residence or (2) by a household ***service business*** whose services have been requested by a member of the household occupying that residence. 119 Cong. Rec. at 24,796 (emphasis added).

The Department itself has acknowledged that eliminating the exemption for third party employers will "dramatically increase" the cost of companionship services. *See Long Island Care at Home Ltd. v. Coke*, Brief for the United States as *Amicus Curiae*, Docket No. 06-593 (U.S. 2007) (citing public statements of the Small Business Administration and the Department of Health and Human Services). In the same Supreme Court brief, the Department declared that excluding third party employers from the overtime exemption would disrupt service to the elderly and disabled due to the increased need of providers to limit workers to 40 hours of work each week in order to control costs. "Such difficulties would lead to increased institutionalization, which is contrary to government policy." *Id*. Finally, the Department's Supreme Court *amicus* brief observed that requiring third party employers to pay overtime to companionship employees would in effect eliminate the exemption for the overwhelming majority of employees previously covered by the exemption – as high as 98%. *Id*. Such a drastic reduction in the scope of the exemption is again inconsistent with Congressional intent.

These and similar arguments persuaded the Supreme Court that the legislative history did not support the Department's current claim that Congress somehow intended to limit the exemption to exclude those employees who are employed by third parties. Significantly, Supreme Court Respondent Evelyn Coke made almost exactly the same arguments regarding the legislative history that the Department is now making in support of the new Rule.[13]   But the Supreme Court in *Coke* rejected Coke's (and now the Department's) reading of legislative history, flatly stating: "We do not find these arguments convincing." *Id*., 127 S. Ct. at 2346.

---

[13] Respondent Coke's Supreme Court filings pointed to the supposed overall purpose of the 1974 Amendments to extend FLSA coverage, and that the FLSA previously covered companionship workers employed by third party employers large enough to qualify as "enterprises." *Id*. at 2346-7.  The Respondent likewise highlighted statements made by some members of Congress distinguishing between "professional domestics" and mere family members or neighbors, as well as language in a different statute (the Social Security Act) which defines "domestic service employment" differently from the FLSA.  Each of these arguments has been repeated by the Department as its primary justification for the new Rule.

The Department erroneously contends in the new Rule that the *Coke* opinion "explicitly affirmed the Department's authority to address the issue of third party employment in the domestic service context." 78 Fed. Reg. at 60482.   But in reality, the Supreme Court only affirmed what the statute itself says, *i.e.*, that the Department was authorized to fill "gaps" in the definition of statutory terms such as "domestic service employment" and "companionship services," including whether the FLSA should cover "all companionship workers paid by third parties." 551 U.S. at 167.   As noted above, the Department's new Rule does not address the definition of *any* of the statutory terms in Section 213(a)(15).   Instead, the Department simply declared that no third party employers would be allowed to "avail themselves" of the statutory exemption.   The Department's new and unprecedented approach to the FLSA was not before the Supreme Court in *Coke* and was not sanctioned by the *Coke* opinion. Certainly, nothing in the *Coke* opinion suggests that Congress vested the Department with the unlimited authority to rewrite the plain language of the Act.[14]

Finally, it is significant that Congress has amended the FLSA on numerous occasions since the promulgation of the Department's longstanding rules recognizing the exemption of companionship and/or live-in employees of third party employers. During the past four decades, Congress has never expressed any displeasure with the Department's previous rules, even when the third party exemptions gained heightened visibility after the Supreme Court's approval of them in the *Coke* case.   Since that ruling, as noted above, Congress has specifically considered and rejected legislation seeking to overrule the Supreme Court's decision by excluding third

---

[14] It must also be noted that the *Coke* decision only considered the Department's interpretation of Section 213(a)(15), not Section 213(b)(21).  The latter section does not give the Department any discretion to "define or delimit" the terms of the provision, which plainly exempts "any" live-in domestic service employee, regardless of their employer.  The Department's purported claim to unlimited delegation of authority under the *Coke* holding, which should not justify the new Rule even as to section 213(a)(15), clearly should carry no weight whatsoever with respect to Section 213(b)(21).

party employers from the FLSA home care exemptions. *See* "The Fair Home Health Care Act of 2007, H.R. 3582 and S. 2062 (110th Cong. 2007); "The Direct Care Job Quality Improvement Act of 2011," H.R. 2341 and S. 1273 (112th Cong. 2011); and "The Direct Care Workforce Empowerment Act of 2013," H.R. 5902 and S. 3696 (113th Cong. 2013).  Meanwhile, Congress has repeatedly amended the FLSA to modify other exemptions, without changing the Department's exemption of third party employers of home care workers.

Both the Supreme Court and the D.C. Circuit have repeatedly held that Congressional re-enactment of a statute without pertinent change to an agency's longstanding interpretation of it is "persuasive evidence that the interpretation is the one intended by Congress." *NLRB v. Bell Aerospace v. NLRB*, 416 U.S.267, 274-75 (1974); *see also Sebelius v. Auburn Regional Med. Ctr.,* 133 S. Ct. 817, 827 (2013); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986); *Altman v. SEC*, 666 F. 3d 1322, 1326 (D.C. Cir. 2011); *Creekstone Farms Premium Beef, LLC v. Department of Agriculture*, 539 F. 3d 492 (D.C. Cir. 2008).  For this reason as well, the Department's previous and still-current rule allowing employees of third party employers to be exempt from overtime under the FLSA must be deemed to be the most consistent with Congressional intent, and the Department's new Rule must be set aside.

### B.     THE NEW RULE FAILS TO PROVIDE ANY ADEQUATE JUSTIFICATION FOR THE DEPARTMENT'S REVERSAL OF LONGSTANDING   ENFORCEMENT OF THE FLSA EXEMPTIONS.

Even if the new Rule could be found not to be inconsistent with the plain language and legislative intent underlying the FLSA, the Rule should still be set aside under the arbitrary and capricious standard of the APA.  Specifically, the Department has failed to provide an adequate justification for reversing four decades of policy interpreting the Act, as required by the Supreme Court's holdings in *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut.*

*Automobile Ins. Co.*, 463 U.S. 29, 41 (1983); and *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 503 (2009).

The primary justification given by the Department for the change is that the current regulations somehow "no longer align with Congress's intent when it extended FLSA protections to domestic service employees" as a result of "changes to the home care services industry, the home care services workforce, and the scope of home care services provided" since 1974. 78 Federal Register at 60455.[15] There are thus two components to the Department's purported justification for the new Rule: (1) the claim that Congress did not intend to exempt employees of third party providers when it exempted companionship and live-in services from domestic services covered by the FLSA in 1974; and (2) the claim that the industry has changed so much since 1974 that Congress's previous intent is somehow no longer binding on the Department. Neither claim can withstand scrutiny.

First, the Department's claim that Congress did not intend to exempt employees of third party employers when it enacted the 1974 amendments, as noted above, is essentially a re-argument of the losing position at the U.S. Supreme Court in the *Coke* case.  The Supreme Court has already rejected the Department's arguments on Congressional intent, and no purpose is served by revisiting those arguments here. It is important to recognize, however, the false premise on which the Department's overall justification for the new Rule is based: the idea that the 1974 amendments were intended by Congress to exempt only those employees who were "not regular breadwinners or responsible for their families support." 78 Fed. Reg. at 60481.

---

[15] Elsewhere, the Department summarizes its justification for the new third party exclusion as follows: "After considering the purpose and objectives of the amendments as a whole, reviewing the legislative history, and evaluating the state of the home care industry, the Department believes that the companionship services exemption was not intended to apply to third party employers." *Id*. at 60482.

Again, the Supreme Court rejected that reading of Congressional intent, and it is impermissible for the Department to rely on that erroneous and judicially rejected view of Congressional intent as its primary basis to change the Rule.

The Supreme Court issued its decision in *Coke* in 2007, a mere four years before the Department issued its NPRM proposing to change the rule that the Supreme Court had just approved, and a mere six years before the Department's adoption of the Final Rule.  Though the Department argues at some length that the home care industry has changed in the four decades since the 1974 amendments to the FLSA, the Department nowhere claims in the Final Rule that the industry has changed in any significant way since the Supreme Court issued its 2007 ruling in *Coke*.  For this reason alone, the new Rule must be deemed to be arbitrary and capricious and set aside.

But even if it were deemed to be acceptable for the Department to consider changes to the home care industry that occurred before the Supreme Court's 2007 ruling, the industry changes identified by the Department do not justify the radical decision to exclude all third party employers from availing themselves of the statutory exemptions for companionship and live-in domestic employees.[16]  Indeed, the industry changes that are decried by the Department in the new Rule are precisely those that Congress intended, *i.e.*, the reduction in institutionalization of the elderly and disabled in favor of increased demand for long-term home care services. 78 Fed. Reg. at 60458.  This shift away from institutionalization has been made possible to a significant

---

[16] The Department's claims that the industry has changed are greatly overstated.  In particular, the Department ignores the fact that the <u>job duties</u> of home care service providers are the same today as they were in 1974, providing "fellowship, care, and protection" for people who are physically or mentally infirm.

extent by the cost controls resulting from the FLSA overtime exemptions.[17] It is irrational for the Department to eliminate the overtime exemption for the vast majority of all companionship and live-in domestic workers when the evidence in the Administrative Record strongly indicates that this change will create a perverse incentive for *re-institutionalization* of the elderly and disabled.[18]   The new Rule also overlooks or ignores the strong likelihood that consumers will lose the continuity of care that is currently typical of third party companion service.  Elderly family members with dementia will be particularly affected by having to deal with multiple unfamiliar caregivers, because the caregivers' employers will be compelled to cut short the hours worked by their employees in order to avoid overtime costs.[19]

        In ignoring the substantial evidence of adverse impact that will befall vulnerable consumers of home care services under the new Rule, the Department has heavily relied on the fact that there is no data showing such impact in the states that already require overtime payments to home care employees under their state laws. *See* 78 Fed. Reg. at 60842-43. According to the Department, there are 15 states that currently require "minimum wage and overtime protections to all or most third party-employed home care workers." *Id.* at 60842.  But this finding is incorrect. Only four of the states listed (Maine, Maryland, Massachusetts, and New Jersey) already require payment of overtime to both companion employees and live-in

---

[17] The Department attributes a large portion of this shift to the availability of government funding assistance for home care under Medicare and Medicaid.  But Medicare does not typically reimburse for companionship services, and most Medicaid programs do not reimburse for overtime.   The great majority of home care services are paid for privately and are extremely reactive to price changes. *See* IFA Comments at 4; Navigant Study at 43.

[18] *See* Comments of NAHC at 11; Comments of NPDA at 5; Comments of IFA at 3; see also Navigant Report at 49 ("It is certain … that the demand for institutional care will increase, perhaps substantially."); *See also* the Companionship Exemption Survey Report jointly conducted by NPDA and NAHC, Attached as App. 1 to the Comments filed by NAHC (Reporting that more than 80% of home care providers predict significant cost increases to consumers as a result of the new Rule).

[19] Companionship Exemption Survey Report, at p.13.

domestic employees.  Other states relied on by the Department either currently make exemptions for live-in caregivers employed by third parties (who the Department's new Rule does not exempt), or else such states impose much less onerous overtime requirements on third-party employers.  These less onerous states include Michigan, which appears to be the only state reporting actual data, on which the Department erroneously relies in claiming that there has been no adverse impact from recent changes to that state's overtime exemptions.[20]

It must be noted that the Supreme Court has held federal agencies to a higher burden of justifying reversals of longstanding policies where such reversals "rest upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account.  In such cases, … a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515-6.  The Department in the present case cannot meet this higher burden.  As discussed above, the Department has ignored or improperly discounted the facts underlying the prior policy of exempting home care companions and live-in domestics.  Contrary to the new Rule, the prior policy was intended by Congress to encourage deinstitutionalization of care, control costs of care, and maintain continuity of care for a longer number of hours each day.  Substantial evidence in the record indicates strongly that each of the foregoing adverse impacts will occur under the new Rule.  The Department has failed to justify

---

[20] *See* Michigan Compiled Laws Section 408.420(2)(a) (contrary to the Department's finding, Michigan continues to exempt live-in domestic employees from its state overtime requirements).  The Department also ignored testimony in the Administrative Record from an actual third party home care provider who testified to the numerous adverse impacts of the Michigan law. *See* Statement of Wynn Esterline Before the House Committee on Education and the Workforce, March 20, 2012, attached as Exhibit to Comments of Husch Blackwell dated March 21, 2012.

its attempt to ignore these facts, and the new Rule must be found to be arbitrary and capricious as a result.

## VII.    CONCLUSION

For each of the reasons set forth above and in Counts I and II of Plaintiffs' Complaint, Plaintiffs Motion for Expedited Partial Summary Judgment should be granted and the third-party provisions of the new Rule should be set aside and an injunction issued against their enforcement prior to January 1, 2015.

/s/ *Maurice Baskin*
Maurice Baskin (D.C. Bar No. 248898)
Littler Mendelson, P.C.
1150 17th St., N.W.
Washington, D.C. 20036
Telephone: 202.772.2526
Fax:    202.318.4048
mbaskin@littler.com

William A. Dombi
D.C. Bar No. 445832
Center for Health Care Law
228 Seventh Street, SE
Washington, D.C. 20003
Telephone: (202) 547-5262
Facsimile:  (202) 547-7126
wad@nahc.org

Attorneys for Plaintiffs