**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

DEC 2 2 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| **HOME CARE ASSOCIATION OF** <br> **AMERICA,** *et al.,* | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | )    **Case No. 14-cv-967 (RJL)** <br> ) |
| **DAVID WEIL,** *et al.,* | ) <br> ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION
(December 22, 2014) [Dkt. ##9, 13]

For over forty years, Congress has exempted third-party providers of home care

services from having to pay either minimum or overtime wages to their employees who

provide domestic companionship services to seniors and individuals with disabilities, or

to pay overtime wages to live-in domestic service employees.  On October 1, 2013,

however, the Department of Labor issued a new regulation that takes these longstanding

exemptions away from third-party employers.

Plaintiffs Home Care Association of America, the International Franchise

Association, and National Association for Home Care & Hospice (together, "plaintiffs")

bring this action under the Administrative Procedure Act, 5 U.S.C. §§ 701-06, against

defendants David Weil, in his official capacity as Administrator of the United States

Department of Labor's Wage and Hour Division; Thomas E. Perez, in his official

capacity as the Secretary of the Department of Labor; and the Department of Labor itself

(together, "defendants" or "the Department").  Compl. ¶ 1 [Dkt. #1].  Plaintiffs challenge

this new Department of Labor regulation as an arbitrary and capricious exercise of authority inconsistent with Congress's language and intent. *See generally* Compl. Indeed, plaintiffs contend, *inter alia*, that if this new rule, which goes into effect on January 1, 2015, is allowed to stand, it will have a destabilizing impact on the entire home care industry and will adversely affect access to home care services for millions of the elderly and infirm. *See* Compl. ¶ 4.

Before me now are plaintiffs' motion for partial summary judgment on Counts I and II of their Complaint and defendants' motion to dismiss, or, in the alternative, for summary judgment. Pls.' Mot. for Expedited Partial Summ. J. ("Pls.' Mot.") [Dkt. #9]; Defs.' Mot. to Dismiss or in the Alternative Cross-Mot. for Summ. J. ("Defs.' Mot.") [Dkt. #13].[1]  After consideration of the parties' pleadings, the arguments of counsel, the relevant law, and the entire record in this case, plaintiffs' motion for partial summary judgment is GRANTED, defendants' motion is DENIED, and the Department's revised Third Party Employer regulation scheduled to go into effect on January 1, 2015, is VACATED.

## BACKGROUND

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, first passed in 1938, obligates employers to pay covered employees minimum wage for all hours worked and overtime wages for hours worked in excess of 40 in a week, *id.* §§ 206-07.

---

[1] Defendants title Docket Entry 13 as "Defendants' Combined Memorandum in Support of their Motion to Dismiss or in the Alternative their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment," which is the same title found on Docket Entry 13-1. It is clear from the context, however, that Docket Entry 13 is the defendants' motion and 13-1 is their memorandum in support.

2

Congress amended the FLSA in 1974 in part to extend certain labor protections, including the provision of minimum and overtime wages, to domestic service employees.[2] Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 7, 88 Stat. 55, 62; *see* 29 U.S.C. § 201 (finding that domestic service employment affects commerce); *id.* § 206(f) (extending minimum wage protection); *id.* § 207(*l*) (extending overtime protections).

At the same time that it expanded FLSA coverage to domestic service employees, Congress included exemptions tied to certain types of domestic service work. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 7(b)(3)-(4), 88 Stat. 55, 62. In particular, the statute explains that its overtime and minimum wage requirements shall not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15) ("companionship services exemption"). Nor shall its overtime requirements apply to "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21) ("live-in domestic employee exemption"). The exemptions at issue here have remained in place since the passage of the 1974 Amendments, though FLSA exemptions have been amended since that time. *See, e.g.*, Act of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731 (defining "fire protection activities" to clarify an overtime exemption); Small

---

[2] Prior to the passage of these amendments, only those domestic service workers employed by a business large enough to be subject to the FLSA's enterprise coverage were included within the FLSA's protections. 39 Fed. Reg. 35,385; 78 Fed. Reg. 60,481.

Business Job Protection Act of 1996, Pub. L. No. 104-188, § 2105(a), 110 Stat. 1755,

1929 (adding an exemption under 29 U.S.C. § 213(a) for certain computer professionals);

Act of Sept. 30, 1994, Pub. L. No. 103-329, § 633(d), 108 Stat. 2382, 2428 (adding an

overtime and minimum wage exemption for certain criminal investigators).

Following the passage of the 1974 Amendments, the Department of Labor

promulgated implementing regulations in 1975. 40 Fed. Reg. 7404. Of interest here, the

regulations focus on the employees and the nature of the employees' services. 40 Fed.

Reg. 7405. The "term 'domestic service employment' refers to services of a household

nature performed by an employee in or about a private home (permanent or temporary) of

the person by whom he or she is employed."[3] 40 Fed. Reg. 7405. Examples include

cooks, housekeepers, caretakers, chauffeurs, and "babysitters employed on other than a

casual basis." *Id.*

"Companionship services" means "those services which provide fellowship, care,

and protection for a person who, because of advanced age or physical or mental infirmity,

cannot care for his or her own needs." *Id.* Services "which require and are performed by

trained personnel," such as by nurses, do not qualify as "companionship services." *Id.*

Finally, "live-in" workers are described as "[d]omestic service employees who reside in

the household where they are employed." 40 Fed. Reg. 7406.

The regulations further specify that the exemptions cover companions and live-in

domestic service workers who are "employed by an employer or agency other than the

---

[3] Although the phrase "of the person by whom he or she is employed" apparently conflicts with the current third-party regulation described below, the Supreme Court has held that this more general regulation does not invalidate the specific third-party regulation regarding companionship and live-in workers. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 169-70 (2007).

family or household using their services." 40 Fed. Reg. 7407. Although the final 1975 regulations acknowledge that the Department contemplated the question of whether employees of third parties should be exempt under the statute, the Secretary "concluded that these exemptions can be available to such third party employers since they apply to 'any employee' engaged 'in' the enumerated services." 40 Fed. Reg. 7405. The final regulation elaborated, "This interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions." *Id.* These regulations remained substantially unchanged until the rulemaking at issue here.[4] *See* 29 C.F.R. §§ 552.3, 552.6, 552.102, 552.109 (current regulations).

In 2007, the Supreme Court heard a challenge to the validity of the long-standing inclusion of employees paid by third parties within the companionship services exemption. In *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), a domestic worker who had been employed by a third party to provide companionship services sued her former employer, claiming she was entitled to minimum and overtime wages under the FLSA. With the United States defending the current regulation as amicus curiae, *see* Br. for the U.S. as Amicus Curiae Supporting Pet'rs, *Coke*, 551 U.S. 158 (No. 06-593), the Court concluded that the third-party rule was valid and binding, *Coke*, 551 U.S. at 162.

In response to the Supreme Court's decision in *Coke*, several bills were introduced in Congress seeking to abolish this exemption. *See* "Direct Care Job Quality

---

[4] The Department previously considered changing the third-party employer regulation, *see* 66 Fed. Reg. 5481 (2001); 60 Fed. Reg. 46,797 (1995); 58 Fed. Reg. 69,310 (1993), but ultimately left the regulation in place until the rulemaking described below.

Improvement Act of 2011," H.R. 2341 and S. 1273, 112th Cong. (2011); "Direct Care Workforce Empowerment Act," H.R. 5902 and S. 3696, 111th Cong. (2010); "Fair Home Health Care Act of 2007," H.R. 3582 and S. 2061, 110th Cong. (2007). Notwithstanding efforts by legislators in the majority party in both the House and Senate in three consecutive Congresses (110th, 111th, and 112th),[5] none of their bills ever generated sufficient support to get out of committee and to the floor of either house of Congress. *See generally* Congress.gov, https://www.congress.gov/ (searchable bill histories).

Undaunted by the Supreme Court's decision in *Coke*, and the utter lack of Congressional support to withdraw this exemption, the Department of Labor amazingly decided to try to do administratively what others had failed to achieve in either the Judiciary or the Congress. The Department, in December 2011, published a Notice of Proposed Rulemaking to revise the FLSA domestic service regulations. The Proposed Rule reworked the definitions of certain terms, including "domestic service employment" and "companionship services," and limited the companionship and live-in employee exemptions to workers employed by the family or household using the services, thereby excluding third-party employers from the exemptions. 76 Fed. Reg. 81,190-98, 81,244.

After receiving over 26,000 comments, 78 Fed. Reg. 60,460, including comments from plaintiffs, *see* J.A., Tabs D-J [Dkt. ##17-4–17-10], the Department published the Final Rule on October 1, 2013, 78 Fed. Reg. 60,454 ("new rule" or "new regulation").

---

[5] In the 112th Congress, the majority party remained the same in the Senate, but switched in the House from Democratic to Republican control. Thus, Rep. Linda Sanchez's (D-CA-39) 2011 bill, H.R. 2341, was offered when she was in the minority party.

This new rule is scheduled to go into effect on January 1, 2015.[6]  *Id.*  Of relevance here,

of course, is the new rule's effect on the application of the companionship services and

live-in domestic service employee exemptions.[7]  In a section entitled "Third Party

Employment," it states that "[t]hird party employers of employees engaged in

companionship services . . . may not avail themselves of the minimum wage and

overtime exemption" provided by the statute, and "[t]hird party employers of employees

engaged in live-in domestic service employment . . . may not avail themselves of the

overtime exemption" provided by the statute.  78 Fed. Reg. 60,557.

Plaintiffs are trade associations that represent businesses employing workers

currently subject to the FLSA companionship services and/or live-in domestic service

exemptions.  Compl. ¶¶ 9-11.  As such, plaintiffs' member organizations include third-

party employers who would not be able to "avail themselves" of the FLSA minimum and

overtime wage exemptions for companions and live-in domestic service workers if the

new rule were to go into effect.

Plaintiffs move for partial summary judgment on Counts I and II of their

Complaint, which involve the new third-party regulation.  Pls.' Mot.; Pls.' Mem. in Supp.

of Mot. for Expedited Partial Summ. J. ("Pls.' Mem.") [Dkt. #9-1].  Defendants move to

dismiss those counts, or, in the alternative, cross-move for summary judgment.  Defs.'

---

[6] The Department has announced that it will not bring enforcement actions against any employers regarding violations of the FLSA resulting from the new rule for the first six months it is in effect.  79 Fed. Reg. 60,974-75.

[7] Plaintiffs also challenge the new rule's revised "companionship services" definition in their Complaint, Compl. ¶¶ 34-39, but that issue is not before the Court on this Motion for Expedited Partial Summary Judgment, Pls.' Mem. at 2 n.1.  The change regarding third-party employment was not effected through any revision to the definition of "companionship services," or any other definition, for that matter.  78 Fed. Reg. 60,557.

Mot.; Defs.' Combined Mem. in Supp. of Mot. to Dismiss or in the Alternative Cross-

Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Mem.") [Dkt. #13-1].

I heard oral argument on the cross-motions on November 19, 2014.

## LEGAL STANDARD

Under Rule 56(a), summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  There is no fact-finding necessary here, as the parties rest this case on

the administrative record.  "Summary judgment is an appropriate mechanism for

resolving cases involving administrative rulemaking on the record, particularly where, as

here, the case turns chiefly on issues of statutory construction."  *Indiv. Reference Servs.*

*Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 22 (D.D.C. 2001) *aff'd sub nom. Trans Union LLC*

*v. FTC*, 295 F.3d 42 (D.C. Cir. 2002); *see Troy Corp. v. Browner*, 120 F.3d 277, 281

(D.C. Cir. 1997).

## ANALYSIS

### I.    *Chevron* Analysis

Plaintiffs first argue that the new rule conflicts with the plain language and

legislative history of the FLSA.  Pls.' Mem. at 11-17.  The Department disagrees and

counters that the new regulation is entitled to deference because it was promulgated

pursuant to the Department's rulemaking authority in this area and reflects a reasonable interpretation of the statute. Defs.' Mem. at 13-28.[8]

The Court analyzes a challenge to the validity of an agency-promulgated rule under the analytical framework laid out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The "inquiry under *Chevron* is rooted in statutory analysis and is focused on discerning the boundaries of Congress' delegation of authority to the agency." *Arent v. Shalala*, 70 F.3d 610, 615 (D.C. Cir. 1995). First, in what is referred to as *Chevron* Step I, the Court asks "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If so, the inquiry goes no further, because the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.

If Congress has not spoken directly on the matter at issue, then the analysis moves to *Chevron* Step II—whether Congress has expressly or implicitly delegated authority to the agency to proceed with the force of law to implement a statutory provision or fill a statutory gap. If Congress expressly delegates "authority to the agency to elucidate a specific provision of the statute by regulation[, . . . the] regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843-44. If Congress implicitly delegates authority to an agency, the Court defers to the

---

[8] Plaintiffs further argue that, should the Court find the new rule not to conflict with the statute, the Court nonetheless should set the rule aside as arbitrary and capricious because the Department of Labor did not provide an adequate justification for changing its long-established policy interpreting the FLSA. Pls.' Mem. at 17-22. The Department maintains that its use of the notice and comment rulemaking process and consideration of all of the relevant factors preclude plaintiffs from carrying their burden of proving the regulation is arbitrary and capricious. Defs.' Mem. at 29-35. For the reasons described below, I do not reach this *Chevron* Step II issue.

9

agency's construction of the statute so long as it is a reasonable one. *Id.* at 844; *see United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (explaining that "it can still be apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law"). However, a Court may not "*presume* a delegation of power from Congress absent an express *withholding* of such power." *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 659 (D.C. Cir.) *amended by* 38 F.3d 1224 (D.C. Cir. 1994). Unfortunately for the Department of Labor, I need not get to a Step II analysis in this case.

The essence of the first stage of the Court's inquiry is what questions did Congress already answer, and what questions did Congress leave up to the Department of Labor to answer? The Department has not and cannot argue that the statutory text *requires* a regulation that effectively excludes those workers employed by third parties from the exemption. The Supreme Court has rejected such a construction. *See Coke*, 551 U.S. 158. Instead, the Department rests its argument on delegated definitional authority and general implementation authority to answer what *it* considers to be open questions left by Congress. Defs.' Mem. at 15-16; Defs.' Reply in Supp. of Mot. to Dismiss or in the Alternative Cross-Mot. for Summ. J. at 1-2 ("Defs.' Reply") [Dkt. #18]. Plaintiffs, on the other hand, contend that the exemption enjoyed by third-party employers over the past forty years is *not* an open question and the Department of Labor cannot, therefore, manipulate its definitional authority in such a way as to effectively rewrite the exemption out of the law. Pls.' Mem. at 11-13. I agree with the plaintiffs.

10

The FLSA and its amendments undoubtedly envisioned that the Department of Labor would play some role in implementing the statutory scheme. The companionship services exemption itself directs the Secretary of Labor to "define[] and delimit[]" the statutory terms in the exemption, 29 U.S.C. § 213(a)(15), though, notably, no such express direction is stated in the live-in domestic employee exemption, 29 U.S.C. § 213(b)(21). Further, the 1974 Amendments authorize the Secretary of Labor in a general sense "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." Fair Labor Standards Amendments of 1974, Pub. L. 93-259, § 29(b), 88 Stat. 55, 76. However, an agency's general rulemaking authority does not necessarily mean that every specific rule the agency promulgates will be a valid exercise of that authority. *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006). Congress surely did not delegate to the Department of Labor here the authority to issue a regulation that transforms defining statutory terms into drawing policy lines based on who cuts a check rather than what work is being performed.

As stated above, Congress merely left a number of definitional gaps in the exemptions' statutory language, including regarding what companionship services are and what domestic service employment is. The Department, appropriately, has filled those gaps through regulations, including revised definitions for "domestic service

employment" and "companionship services" in the new rule scheduled to go into effect January 1, 2015.[9]

Once those definitional gaps were filled, however, the statutory loop was closed. The language of the exemption provisions is quite clear: "*any* employee" who is employed to provide companionship services, or who resides in the household in which he or she is employed to perform domestic services, is covered by the exemption. 29 U.S.C. § 213(a)(15), (b)(21) (emphasis added). If an employee's work is encompassed within the statutory terms as defined by the regulations, the employer is not obligated to pay overtime and/or minimum wage. This, indeed, is the natural reading of the statute.[10] There is no explicit—or implicit—delegation of authority to the Department to parse groups of employees based on the nature of their employer who otherwise fall within those definitions.

That Congress intended the exemption to apply to *all* employees who provide companionship and live-in domestic services is further evidenced by analyzing the surrounding exemption text. *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (explaining that a court must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose" (internal quotation marks omitted)). In particular, Congress did not hesitate in other exemptions listed

---

[9] The Department's effort to narrow the scope of those exempted services through its new changes to the regulatory definitions of statutory terms is not before me at this point.

[10] The Department itself recognized this statutory reality in the past. "This language is naturally read to exempt any employee who provides companionship services to an aged or infirm individual in a private home. The statute does not draw any distinction between companions who are employed by the owners of the homes in which they are working and companions who are instead employed by third party employers." *See* U.S. Dep't of Labor, Wage and Hour Advisory Mem. No. 2005-1 (2005), *available at* http://www.dol.gov/whd/FieldBulletins/index.htm.

within Section 213 to make distinctions on the basis of who employs the employee. *See,*

*e.g.,* 29 U.S.C. § 213(a)(3) (exempting "any employee employed by an establishment

which is an amusement or recreational establishment, organized camp, or religious or

non-profit educational conference center" in certain circumstances); *id.* § 213(b)(3)

(exempting "any employee of a carrier by air"); *id.* § 213(b)(10) (exempting salesmen for

motor vehicles and certain other machinery, but only if employed by a certain type of

employer).

Further, in addition to exempting "any employee employed in domestic service

employment to provide companionship services for individuals who (because of age or

infirmity) are unable to care for themselves," Section 213(a)(15) itself also exempts "any

employee employed *on a casual basis* in domestic service employment to provide

babysitting services." *Id.* § 213(a)(15) (emphasis added).  To the extent that Congress

conceptualized companions as "elder sitters" analogous to baby sitters, as argued by the

Department, Defs.' Mem. at 7, it is clear that Congress recognized that one could "sit"

casually or on a more established basis—and chose to include *all* those providing

companionship services within the exemption.  The Department explicitly has

recognized, and continues to recognize in the new regulations, that "[t]he 'casual'

limitation does not apply to companion services."  29 C.F.R. § 55.106; 78 Fed. Reg.

60,557.

To say the least, where Congress wanted to draw a line based on the circumstances

surrounding an employee's employment rather than the type of services the employee

provides, it did so.  And Congress did not include a "casual basis," employer-based, or

any other modifier when exempting "any employee" providing companionship or live-in domestic services.

This, of course, makes sense. Congress was concerned with what services employees were providing, not whether money was routed through a third party on its way to the employee from the individual or family requiring assistance. Of particular concern here were the costs incurred by those in need of the types of services at issue. *See* 119 Cong. Rec. 24,797-98 (1973) (statements of Sen. Dominick and Sen. Johnston); *see also Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004) ("Congress created the 'companionship services' exemption to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." (internal quotation marks omitted)).

"Agencies are . . . 'bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.'" *Colo. River Indian Tribes*, 466 F.3d at 139 (quoting *MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 n.4 (1994)). Here, Congress has directed the Department of Labor to define statutory terms, and then include "any employee" who provides services according to those definitions within the scope of the exemptions. The focus is on the type of the services provided, not who pays the check. As such, Congress has clearly spoken on this issue, and the Department's new, conflicting rule therefore cannot survive.

14

**II.**    *Long Island Care at Home Ltd. v. Coke*

The Department argues that plaintiffs' *Chevron* Step I argument is foreclosed by

the Supreme Court's decision in *Long Island Care at Home, Ltd. v. Coke*. Defs.' Mem. at

9-21. I could not disagree more. As the plaintiffs contend, this argument turns the actual

holding in that case on its head.

The Supreme Court stated at the outset of its *Coke* opinion: "The question before

us is whether, in light of the statute's text and history, . . . the Department's [current]

regulation is valid and binding. We conclude that it is." *Coke*, 551 U.S. at 162 (internal

citation omitted). The Supreme Court thus only considered the validity and binding

nature of the previous, and still current, rule that interpreted the statutory definition of

companion employees under Section 213(a)(15).

The Supreme Court did not consider the question with which I am presented by

this new rule: whether the Department is authorized to craft a rule which prevents

employers from "availing themselves" of the Act's statutory exemptions of their

employees in a manner inconsistent with the plain language of Section 213? To the

extent the Supreme Court analyzed the statutory language of the exemption (rather than

how different regulations interacted with one another), the Court focused on the

Department's authority to define statutory terms, which is not the method by which the

Department promulgated the new third-party employer regulation here. *Id.* at 168

(explaining that it was "reasonable to infer . . . that Congress intended its broad grant of

*definitional* authority to the Department to include the authority to answer these kinds of

questions" (emphasis added)).  And the Supreme Court did not consider the live-in domestic employee exemption *at all*.

Finally, in blessing the current companionship services regulation, the Supreme Court was not faced with a regulation that essentially would eviscerate a Congressionally-mandated exemption via a method Congress never envisioned.  By the Department's own numbers, approximately 90% of home health aides and personal care aides, which include those providing companionship services, are employed by third parties, rather than by the individual or family needing services.  Defs.' Reply at 10 n.4; *see* 78 Fed. Reg. 60,519-20.  Congress included the exemptions for a reason, and the Supreme Court's decision in *Coke* not only does not empower the Department to gut them, it does not grant the Department judicial cover for what can only be characterized as a wholesale arrogation of Congress's authority in this area!

## III.    Congressional Inaction

Although not alone dispositive, I cannot overlook the fact that Congress has revisited the FLSA many times since the 1974 Amendments, while the 1975 regulations have been in place.  Indeed, Congress has amended its statutory exemptions over the years in other ways, *see, e.g.*, Act of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731; Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 2105(a), 110 Stat. 1755, 1929, but has *not* altered the exemptions at issue here.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended

by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)

(quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974)).

Following the *Coke* decision, Congress contemplated adjusting the statutory

language of the companionship exemption at least three times, but never did so. *See*

"Direct Care Job Quality Improvement Act of 2011," H.R. 2341 and S. 1273, 112th

Cong. (2011); "Direct Care Workforce Empowerment Act," H.R. 5902 and S. 3696,

111th Cong. (2010); "Fair Home Health Care Act of 2007," H.R. 3582 and S. 2061,

110th Cong. (2007). Six bills were introduced—three in the House of Representatives,

three in the Senate—over the course of three Congressional sessions, where the sponsors

were in the majority party of each,[11] yet there was never sufficient support to get any of

them to the floor of either house of Congress. This unequivocally represents a lack of

Congressional intent to withdraw this exemption from third-party employers. The fact

that the Department issued its Notice of Proposed Rulemaking *after* all six of these bills

failed to move is nothing short of yet another thinly-veiled effort to do through regulation

what could not be done through legislation.[12] Such conduct bespeaks an arrogance to not

only disregard Congress's intent, but seize unprecedented authority to impose overtime

---

[11] *See* note 5, *supra*.

[12] *See, e.g., Am. Ins. Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, No. CV 13-00966 (RJL), 2014 WL 5802283 (D.D.C. Nov. 7, 2014) (vacating a HUD rule that expanded the Fair Housing Act to include disparate impact liability); *Avenal Power Ctr., LLC v. U.S. E.P.A.*, 787 F. Supp. 2d 1, 4 (D.D.C. 2011) (holding that regulatory review process did not relieve EPA Administrator of duty to comply with statutory deadline); *Smoking Everywhere, Inc. v. U.S. Food & Drug Admin.*, 680 F. Supp. 2d 62, 63 (D.D.C.) *aff'd sub nom. Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891 (D.C. Cir. 2010) (finding that FDA did not have authority under the Food, Drug, and Cosmetic Act to regulate electronic cigarettes as a drug-device combination).

and minimum wage obligations in defiance of the plain language of Section 213.  It cannot stand.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for partial summary judgment [Dkt. #9] is GRANTED and defendants' motion to dismiss, or, in the alternative, for summary judgment [Dkt. #13] is DENIED.  Accordingly, the United States Department of Labor's Third Party Employer regulation, promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, is hereby VACATED.  An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge