IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HOME CARE ASSOCIATION OF AMERICA, *et al* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-00967 |
| DAVID WEIL, *et al* | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY
STAY OF AGENCY ACTION AND REQUEST FOR EXPEDITED CONSIDERATION**

### I.    INTRODUCTION

Plaintiffs hereby submit this memorandum in support of their Emergency Motion for
Temporary Stay of Agency Action being filed this date.  The Motion asks this Court for a
temporary stay of Section 552.6 of the Department's new rule, which currently remains
scheduled to go into effect on January 1, 2015, notwithstanding the Court's recent order vacating
Section 552.109 of the same rule. [Dkt. #21].  The new Section 552.6 radically narrows the
definition of "companionship services" in a way that, like Section 552.109, violates the plain
language and legislative intent of Section 13(a)(15) of the Act and is totally impractical, arbitrary
and capricious.

Until this Court ruled on and vacated the third-party employer provisions of Section
552.109, Plaintiffs lacked standing to pursue injunctive relief against the new Section 552.6,
because third-party employers were not allowed to avail themselves of the exemption under <u>any</u>
definition of companionship services, and Plaintiffs were therefore not directly harmed by the
Department's new definition.   Now that the Court has correctly invalidated the third-party

1

provisions of Section 552.109, Plaintiffs' member companies and many other public and private third-party employers are being called upon for the first time to confront the draconian provisions of Section 552.6.  The result is that, one week from now, thousands of employers, employees, state agencies, and elderly and infirm consumers of home care companionship services will be irreparably harmed by the chaotic and unnecessary disruption of such services imposed by Section 552.6.  By contrast, non-third-party employers have had fifteen months to prepare for compliance with the Department's new companionship definition, though they too face insurmountable challenges in complying with the new rule.

The Department itself recognized that beginning enforcement of Section 552.6 on January 1 would cause significant adverse impact on public and private employers, employees, and consumers, even before the third-party employer rule was declared invalid.  The Department announced in October 2014 that it was delaying enforcement of the new rule, including Section 552.6, until July 2015.  *See* 79 Fed. Reg. 60974 (Oct. 9, 2014) [Dkt. #19, Plaintiffs' Notice of Supplemental Authority].  At the same time, the Department failed and refused to extend the effective date of the rule and provided no rational explanation for its refusal.  *Id*.  Because the Department did not postpone the January 1 effective date, employers remain exposed to private employee and class action litigation should they fail to comply with the new rule by January 1.  Such compliance is a practical impossibility for third-party employers in the one week left until January 1 arrives.

Immediately upon issuance of this Court's ruling invalidating Section 552.109, Plaintiffs initiated communications conferring with counsel for the Department.  Plaintiffs specifically requested that the Department voluntarily agree to temporarily postpone the effective date of the new rule, in order to give the Court time to receive expedited briefing and to ultimately rule on

the legality of Section 552.6.  Yesterday, the Department refused Plaintiffs' reasonable request,

leaving Plaintiffs no choice but to file this emergency motion in order to avoid chaos in the home

care industry when the new year arrives. The Department opposes this motion.

## II.   STANDARD FOR REVIEW OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY STAY OF AGENCY ACTION.

This Court is authorized under the APA to stay agency action pending review.  5 U.S.C. §

705.  "The factors to be considered in determining whether a stay is warranted are: (1) the

likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the

likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that

other parties will be harmed by a stay; (4) the public interest in granting the stay." *Cuomo v.*

*U.S. Nuclear Regulatory Comm'n*, 772 F. 2d 972, 974 (D.C. Cir. 1985); *see also R.J. Reynolds*

*Tobacco Co., v. United States Food and Drug Administration*, 823 F. Supp. 2d 36 (D.D.C. 2011)

(Leon, J.) (granting preliminary injunctive relief).  "[A] particularly strong showing on one factor

may compensate for a weaker showing on one or more of the other factors." *AFL-CIO v. Chao*,

297 F. Supp. 2d 155, 161 (D.D.C. 2003).[1]

## III.   ALL OF THE RELEVANT FACTORS SUPPORT ISSUANCE OF THE REQUESTED TEMPORARY STAY.

### A.   Plaintiffs Are Likely To Succeed On The Merits In Challenging The Validity of Section 552.6.

Under the guise of redefining the "companionship services" exempted by Congress in

Section 13(a)(15) of the Act, the Department has effectively <u>repealed</u> the exemption by removing

---

[1] The D.C. Circuit has at times questioned the "sliding scale" approach to preliminary injunction analysis, but the Court has repeatedly left the question open, most recently in *American Meat Inst. v. U.S. Dept. of Agriculture*, 746 F. 3d 1065 (D.C. Cir. 2014).  *See also GEO Specialty Chemicals, Inc. v. Husisian*, 923 F. Supp. 2d 143 (D.D.C. 2011) (Leon, J.)

"care," for all practical purposes, from the regulatory definition.  This agency action is directly contrary to the plain language and legislative intent of Congress.

The statute itself makes clear that the exemption applies to: "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) ***are unable to care for themselves***…." (emphasis added).  The legislative history confirms that "care" for those who are "unable to care for themselves" was an integral part of what was contemplated in creating the companionship exemption.  As Senator Burdick stated during the debates on the exemption: "When the Senator uses the word "companion," the Senator does not mean that in the ordinarily accepted sense that they are there to make them feel good.  **They are there to take care of them**, he means when he uses the work "companion."119 Cong. Rec. 24,801 (emphasis added).  *See also, e.g., Sayler v. Ohio Bureau of Workers' Comp.,* 83 F. 3d 784, 787 (6th Cir. 1996) (holding that a worker who helps an infirm individual dress, bathe, and get around the home is providing companionship services); *Cook v. Diana Hays and Options, Inc.,* 212 F. Appx., 295, 296-7 (5th Cir. 2006) (holding that a direct care worker who assisted in the home with "eating, baths, and teeth brushing, and accompanied the client to doctors and grocery stores was providing exempt services).

Based upon this clear language and legislative history, the Department has for the past four decades defined companionship services as including "fellowship," "protection" and "care," along with incidental household tasks not exceeding 20 percent of the caregiver's working time.  The new Section 552.6, however, for the first time declares "care" itself to be an "incidental" activity limited to 20 percent of working time, rather than preserving "care" as a core purpose of the legislative exemption.  According to the Department, to provide "care" means "to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and

transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with physical taking of medications, and arranging medical care)." *Id*. These are the precise types of services that the vast majority of caregivers are employed to provide to the elderly and disabled individuals in their homes on a regular basis, far in excess of 20 percent of the time. As such, the Department's modified definition will eradicate the application of the statutory exemption to an overhelming percentage of the workers in the home care industry.[2]

The Department will no doubt contend that its redefinition of companionship services is authorized by the Act, unlike the exclusion of third party employers which the Court addressed in its previous order. [Dkt.#21]. To that extent the analysis of Section 552.6 under *Chevron* is slightly different from the Court's analysis of Section 552.109. Nevertheless, the Department's purported redefinition of companionship services in Section 552.6 so far exceeds the scope of Congressional authority and legislative intent as to violate the Act's plain language under *Chevron* Step I.[3] Alternatively, the Department's radical change to the definition of companionship services in Section 552.6 is not a permissible construction of the Act under *Chevron* Step II and is arbitrary and capricious within the meaning of the APA. Simply put, Congressional authorization to an agency to "define and delimit" statutory terms does not

---

[2] These activities have long been distinguished from professional nursing care, which have been considered to be exempt under the Act. Plaintiffs have never contended (and do not contend now) that professional nursing duties should be included in the companionship exemption.

[3] This is particularly so because the Department has grounded its change to 552.6 on the same misguided view of legislative intent that tainted the Department's invalid exclusion of third-party employers in Section 552.109. Specifically, the Department wrongly stated in its justification for Section 552.6 in the Final Rule: "The legislative history indicates that Congress intended to remove from the FLSA's minimum wage and overtime compensation protections only those domestic service workers for whom domestic service was not their vocation …" 78 Fed. Reg. 60464. This is the identical rationale to that which the Court struck down in its ruling on Section 552.109. [Dkt. #21, slip op. at 13-14].

constitute Congressional license to do away with the statutory language altogether. That is what has occurred here.

It should also be noted that the same six bills which the Court noted failed to result in any Congressional change to the third-party exemption [Dkt.#21, slip op. at 17], make an even more compelling case of Congressional intent to preserve the Department's longstanding previous interpretation of the exempt job duties for companionship services, including caregiving. None of the bills made <u>any</u> change to the definition of companionship services. Thus, even those few Congressmen who disagreed with the third-party employer exemption, indicated their intent to <u>preserve</u> the Department's longstanding application of the exemption to "care" services as an integral part of companionship. *See also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974) (Congressional inaction in the face of longstanding agency interpretation constitutes persuasive evidence of Congressional intent).

In addition, because the Court has properly invalidated the third-party provisions of the Department's rule [Dkt.#21], the Department's required regulatory impact analysis clearly must be redone prior to allowing Section 552.6 to go into effect under the Regulatory Flexibility Act, 5 U.S.C. 601-611. The Department's current impact analysis was incorrectly premised on the notion that third-party employers would be unaffected by Section 552.6 (since they were excluded from the exemption by Section 552.109). 78 Fed. Reg. 60497, *et seq.* The Department did not attempt to measure the impact of Section 552.6 on third party employers who, it must be recalled, employ more than 90% of all companionship workers. For this reason alone, Section 552.6 cannot be allowed to go into effect unless and until a new regulatory impact analysis is conducted in conformance with the Regulatory Flexibility Act.

**B.**          **Plaintiffs Will Be Irreparably Harmed Absent A Temporary Stay.**

The impact of Section 552.6 is to eviscerate the statutory exemption, eliminating the exemption for all practical purposes and thereby achieving the same result that the Court held was impermissible as to third party employers. The entire home care industry has been built on providing personal care to meet the Activities of Daily Living (ADL) needs of the elderly and infirm. Such care cannot be limited to 20 percent of daily companionship activities without irreparably harming home care providers and their clients who desperately need such services at affordable (non-overtime) rates. Plaintiffs' members will therefore be irreparably harmed if Section 552.6 is allowed to take effect on January 1, in the absence of a temporary stay. *See* Plaintiffs' Comments in the Administrative Record provided in the Joint Appendix to the Cross-Motions for Summary Judgment. *See also* the attached affidavit of William Dombi, specifically describing the Plaintiffs' irreparable harm, and similar declarations from representatives of the disabled community and from a state agency. See attachments to this Motion.

As further explained in the Administrative Record and attached Affidavits, the core business of Plaintiffs' many thousands of members is personal care that cannot be performed within the confines of the Department's arbitrary new 20 percent limitation under Section 552.6. Because their businesses are structured to provide this core service, and because their elderly and infirm home care customers need and expect such companion care service, any attempt to comply with the new rule in order to remain exempt from overtime would impose significant and unrecoverable costs on every employer. These unrecoverable costs will arise from the drastic changes in employers' business operations that will be required, as well as the reduction in care-related client services, compensation management, payer relations, referral source relations,

documentation of activities, and the entire structure of the home care business.  Dombi Aff. at ¶ 5.

Home care employers' aged and infirm clientele will be directly and adversely affected by the forced elimination of many companion care services under Section 552.6, with consequent loss of goodwill between consumers and Plaintiffs' member employers that itself constitutes irreparable harm. *Id.* Home care consumers will in many cases no longer be able to receive continuous services from a single caregiver, because working hours will have to be capped to control overtime compensation costs.  *Id.* at ¶ 6. The replacement of full-time caregivers with multiple, part-time caregivers, another inevitable result of the new Section 552.6, will create confusion and stress for home care consumers, particularly those suffering from dementia and similar illnesses.  The increased number of "handoffs" among and between caregivers will also reduce the quality of care and increase the amount of waiting time for new caregivers.  Finally, costs to consumers will increase, and Medicaid funding will not be available in many instances. [Dkt.#19].

Each of the foregoing harms to consumers translates into irreparable harm to employers' businesses, due to the loss of customer goodwill and ultimately loss of the customers themselves. Dombi Aff.  The absence of Medicaid funding will also mean that employers will confront unrecoverable costs under the new rule.  Lost customers cannot be recovered.  So too the unrecoverable costs of restructuring core business practices in terms of full and part time employment and expensive tracking of the types of care provided by employees.  Dombi Aff. ¶ ¶ 9-11.

The types of unrecoverable costs described above and in the referenced documents have been held to constitute sufficient irreparable harm to justify temporary stays of agency rules in

other legal challenges, pending the outcome of litigation over the validity of such rules. *See*

*Nalco Co. v. EPA*, 786 F. Supp. 2d 177, 188 (D.D.C. 2011) (finding irreparable harm where

company would lose sales and goodwill with no right of recourse against the federal

government); *Alf v. Donley*, 666 F. Supp. 2d 60, 70-71 (D.D.C. 2009) (finding there to be

irreparable harm where plaintiff declared that he is losing "benefit of the business connections he

has built over the past twenty years," along with lost income with no right of recourse);

*Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 25 (D.D.C. 2009)

(finding irreparable harm); *see also N.C. Growers' Ass'n, Inc. v. Solis*, 644 F. Supp. 2d 664

(M.D.N.C. 2009) (granting preliminary injunction to enjoin DOL from implementing a

substitution rule during a 9 month suspension of a H-2A program regulation).

     Based upon discussions with counsel for the Department, Plaintiffs anticipate that the

Department will oppose this motion in part because of what the Department views as

"inexcusable delay" by Plaintiffs in filing it.  There is no basis for such a contention.  As pointed

out above, until Plaintiffs established their right to avail themselves of the statutory exemption,

*i.e.*, until this Court correctly vacated Section 552.109, Plaintiffs lacked standing to seek

injunctive relief against Section 552.6, which by the terms of Section 552.109 did not apply to

Plaintiffs' third-party employer members.  Plaintiffs are filing this motion within two days of the

Court's order invalidating Section 552.109 and less than 24 hours after conferring with

Department's counsel and learning that the Department is unwilling to postpone voluntarily the

effective date of Section 552.6 beyond January 1.

     Under the unique circumstances of this case, there has been no inexcusable delay in filing

this motion for preliminary injunctive relief. *See Pennenvironment v. PPG Industries, Inc.*, 2014

WL 6982461 at *15 (W.D. Pa. 2014) (granting injunctive relief notwithstanding two year delay

in filing motion, where plaintiffs needed to wait for resolution of other determinative motions and settlement negotiations); *Gold v. Eng'g Contractors, Inc.*, 831 F. Supp. 2d 856, 860 (D. Md. 2011) (granting injunctive relief and finding delay reasonable in light of need to await completion of related proceedings); *Amicus, Inc. v. American Cable Co., Inc.*, 660 F. Supp. 161 (E.D. La. 1987) (granting injunctive relief and finding no inexcusable delay when the movant properly waited for a decision in a related case, absent which they had no likelihood of success on their motion).

### C.       No Parties Will Be Harmed By A Temporary Stay.

As the Court is aware, the Department waited four decades to issue the new rule. During all that time, the Department never previously declared that anyone was being injured by the application of the previous definition and enforcement of the statutory exemption according to its plain language. Nor did Congress ever object to the Department's longstanding previous definition of companionship services, which properly effectuated Congressional intent.  To the extent that the Department contends that employees will be harmed by the brief stay contemplated by this motion, any such harm to employees who will not receive overtime pay will be counterbalanced by the number of employees who will not lose work hours and pay due to employers' attempts to avoid over-scheduling employees who are no longer exempt. *See* Dombit Aff.; *see also* Navigant Study in the Joint Appendix. For each of these reasons, there is no basis for concluding that a temporary stay of the January 1 effective date will harm any party to this action.

**D.      The Public Interest Overwhelmingly Supports A Temporary Stay**

As Plaintiffs have previously argued, Congress enacted the companionship exemption in order keep home care costs as affordable as possible for the elderly and infirm and their families and to avoid institutionalization.  The home care industry has fulfilled Congress's objectives for the last 40 years.  The new rule undermines this Congressional intent and jeopardizes longstanding relationships between consumers, caregiving employees and their employees, as well as state funding providers. Regardless of the final outcome of this litigation, the public interest is ill served by the Department's stubborn insistence on imposing the January 1 effective date for Section 552.6 under the changed circumstances resulting from the Court's recent order invalidating Section 552.109.  The chaotic conditions in the home care industry that will result from the arbitrary imposition of a January 1 effective date for Section 552.6 will harm the public and should not be permitted to occur. *See* Affidavits of Bruce Darling, Kelly Buckland, and Kari Bruffett.

Plaintiffs stand ready to fully brief cross-motions for summary judgment as to Section 552.6 on an expedited basis, in order to reduce the time in which the temporary stay would delay the effective date.  There is no reason why this litigation cannot be concluded well in advance of the Department's previously extended deadline for enforcement of the new rule.

**CONCLUSION**

For each of the reasons set forth above, Plaintiffs ask that the Court temporarily stay the

January 1 effective date of Section 552.6 of the challenged rule.

Respectfully submitted,

*/s/ Maurice Baskin*
Maurice Baskin (D.C. Bar No. 248898)
Littler Mendelson, P.C.
1150 17th St., N.W.
Washington, D.C. 20036
Telephone: 202.772.2526
Fax:    202.318.4048
mbaskin@littler.com


William A. Dombi
D.C. Bar No. 445832
Center for Health Care Law
228 Seventh Street, SE
Washington, D.C. 20003
Telephone: (202) 547-5262
Facsimile: (202) 547-7126
wad@nahc.org

Attorneys for Plaintiffs