UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HOME CARE ASSOCIATION OF )
AMERICA, *et al.*, )
)
    Plaintiffs, )
)
        v. )   **Case No. 14-cv-967 (RJL)**
)
DAVID WEIL, *et al.*, )   **FILED**
)
    Defendants. )   JAN 1 4 2015

<u>MEMORANDUM OPINION</u>
(January 14, 2015) [Dkt. #23]

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

On December 22, 2014, I issued an Opinion and Order vacating the Third Party

Employment provision of the Department of Labor's October 2013 regulations

implementing the 1974 Amendments to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201-19, because the rule conflicted with the statute itself. Dec. 22, 2014 Mem.

Op. ("Dec. 22 Op.") [Dkt. #21]; Dec. 22, 2014 Order [Dkt. #22]. Before me now is

another challenge by the same plaintiffs[1] to a different part of the same Labor Department

regulations. Specifically, plaintiffs seek to vacate the Department of Labor's narrowed

definition of "companionship services," Section 552.6 of the new rule, promulgated in 78

Fed. Reg. 60,557, and to be codified at 29 C.F.R. § 552.6.

On December 24, 2014, plaintiffs moved for emergency injunctive relief to keep

Section 552.6 from coming into effect on January 1, 2015. Emergency Mot. for

---

[1] Plaintiffs here are Home Care Association of America, International Franchise Association, and National Association for Home Care & Hospice (together, "plaintiffs"), and defendants are David Weil, in his official capacity as Administrator of the United States Department of Labor's Wage and Hour Division; Thomas E. Perez, in his official capacity as the Secretary of the Department of Labor; and the Department of Labor itself (together, "defendants" or "the Department"). Compl. ¶ 1 [Dkt. #1].

Temporary Stay of Agency Action and Req. for Expedited Consideration ("Pls.' Mot.")
[Dkt. #23]. I granted a Temporary Restraining Order on December 31, 2014, staying the
regulation from going into effect for fourteen days. Dec. 31, 2014 Order [Dkt. #26]. On
January 8, 2015, having reviewed the parties' extensive briefing, I consolidated plaintiffs'
motion for a preliminary injunction with consideration of the merits pursuant to Federal
Rule of Civil Procedure 65(a)(2). Jan. 8, 2015 Order [Dkt. #30]. The following day, I
heard oral arguments from the parties on the merits of plaintiffs' case, construing
plaintiffs' emergency motion as a motion for summary judgment on the merits. *See*
*Morris v. District of Columbia*, No. 14-cv-0338, 2014 WL 1648293, at *2 (D.D.C. Apr.
25, 2014). After consideration of the parties' pleadings, the arguments of counsel, the
relevant law, and the entire record in this case, plaintiffs' motion is GRANTED and the
Department's revised companionship services regulation currently scheduled to go into
effect on January 15, 2015, is VACATED.

## BACKGROUND

This matter arises out of the same statutory and regulatory background described
more fully in my December 22, 2014 Opinion. *See* Dec. 22 Op. at 2-7. It concerns the
second prong of a two-prong attack on an exemption from paying overtime and minimum
wages: the companionship services exemption of the FLSA, codified at 29 U.S.C. §
213(a)(15). I vacated the first prong, the third-party employer exemption, two weeks
ago. *See* Dec. 22 Op. The second prong, of course, is the rewritten "companionship
services" definition. The companionship services exemption prevents employers,
whether third-party or not, from being required to pay minimum and overtime wages to

2

"any employee employed in domestic service employment to provide companionship

services for individuals who (because of age or infirmity) are unable to care for

themselves (as such terms are defined and delimited by regulations of the Secretary)." 29

U.S.C. § 213(a)(15).

The Department of Labor's implementing regulations promulgated in the

aftermath of the 1974 Amendments defined companionship services as follows:

> As used in section 13(a)(15) of the Act, the term
> "companionship services" shall mean those services which
> provide fellowship, care, and protection for a person who,
> because of advanced age or physical or mental infirmity,
> cannot care for his or her own needs. Such services may
> include household work related to the care of the aged or
> infirm person such as meal preparation, bed making, washing
> of clothes, and other similar services.

40 Fed. Reg. 7405. The definition further specified that companionship services could

include limited general household work, not to exceed 20 percent of total weekly work

hours, but that it did *not* include services "which require and are performed by trained

personnel, such as a registered or practical nurse." *Id.* This definition remained

unchanged for the past 40 years.

In October 2013, however, after engaging in a full notice-and-comment

rulemaking process, the Department issued a Final Rule revising its domestic service

employment regulations at 29 C.F.R. Part 552.  78 Fed. Reg. 60,454 ("new rule" or "new

regulation"). The new rule, with the exception of those provisions challenged by plaintiffs, went into effect on January 1, 2015.[2] *Id.*

Together with the eradication of the exemption for third-party employers, the Department issued a new, significantly-narrowed, definition of companionship services, Section 552.6 of the regulation. "As used in section 13(a)(15) of the Act, the term companionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 78 Fed. Reg. 60,557 (§ 552.6(a)). Although the new definition included the provision of care, the care provided had to be attendant to, and in conjunction with, the provision of fellowship and protection and it could *not* exceed 20 percent of the total hours worked per person and per workweek. *Id.* (§ 552.6(b)). "Care," as defined by the new regulation, is assistance with "activities of daily living" like dressing, feeding, and bathing, as well as assistance with "instrumental activities of daily living" that allow the client to live independently at home, like driving and meal preparation.[3] *Id.*

---

[2] *See* pages 2 to 7 of my earlier opinion tracing the chronology up to and after the Supreme Court's decision in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007). Dec. 22 Op. at 2-7.

[3] The Department's new regulatory definition reads in full:

§ 552.6 Companionship services.

(a) As used in section 13(a)(15) of the Act, the term companionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to

Plaintiffs are trade associations that represent third-party home care providers that employ millions of workers and provide approximately 90 percent of the services within the scope of the Department's long-standing definition of "companionship services." Compl. ¶¶ 9-11; Dec. 22 Op. at 16.  However, the majority of their services would fall outside of the confines of the new, narrower definition.  Pls.' Mem. in Supp. of Emergency Mot. for Temp. Stay of Agency Action at 5 ("Pls.' Mem.") [Dkt. #23-1].

In their Complaint, filed in June 2014, plaintiffs challenged both the new companionship services definition, Compl. ¶¶ 34-39 (Counts III and IV), and the Department's third-party employment regulation addressed in my previous opinion, *id.* ¶¶ 26-33 (Counts I and II).  Plaintiffs have requested that I vacate both of the challenged

---

accompany the person when outside of the home to monitor the person's safety and well-being.

(b) The term companionship services also includes the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek. The provision of care means to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care).

(c) The term companionship services does not include domestic services performed primarily for the benefit of other members of the household.

(d) The term companionship services does not include the performance of medically related services provided for the person. The determination of whether services are medically related is based on whether the services typically require and are performed by trained personnel, such as registered nurses, licensed practical nurses, or certified nursing assistants; the determination is not based on the actual training or occupational title of the individual performing the services.

78 Fed. Reg. 60,557.

provisions of the Department's new rule and enjoin the Department from enforcing them. Compl. at 15 (Prayer for Relief).

Until I vacated the third-party employment regulation on December 22, 2014, however, the third-party employers that comprise plaintiffs' associations were not permitted to "avail themselves" of the companionship services exemption, so changes to its definition would have no direct impact on plaintiffs' members. This new regulatory scheme, as envisioned by the Department, would require third-party employers to pay overtime and minimum wages to those providing services to the elderly and disabled regardless of whether or not those services were encompassed within the new definition. Plaintiffs contend that because they were concerned about their standing to challenge this narrowed definition, they did not move in August for summary judgment on the companionship services challenge when they sought relief on the third-party employment regulation. Pls.' Mem. at 9. But now that third-party employers maintain their ability to utilize the statutory exemption, the regulatory definition of "companionship services" will have a huge impact on plaintiffs' member organizations—as well as other employers and the clients the home care workers serve.

Thus, two days after my December 22, 2014, Opinion and Order vacating the new third-party employment regulation, plaintiffs filed an emergency motion seeking a temporary stay of the effective date of the revised companionship services definition. Pls.' Mot. They now argue that this new, narrower, regulation defining companionship services violates the language and legislative intent of FLSA Section 13(a)(15) because it "remov[es] 'care,' for all practical purposes, from the regulatory definition." Pls.' Mem.

at 3-4. They further contend, in essence, that this new definition would have the very same impact on the industry as the third-party employment regulation I just vacated, by effectively repealing the statutory exemption. Pls.' Mem. at 3.

Notwithstanding their public pronouncement of non-enforcement of this regulation for six months, 79 Fed. Reg. 60,974-75, the defendants declined to agree to a voluntary stay of the new definition's effective date. Pls.' Mot. at 1. Thus, with the January 1, 2015, effective date looming, I heard oral argument on December 31, 2014, granted a two-week temporary restraining order, Dec. 31, 2014 Order, and set an expedited briefing schedule for a preliminary injunction, Dec. 31, 2014 Docket Entry. After reviewing the Department's opposition and the plaintiffs' reply, I decided to consolidate the preliminary injunction hearing with consideration of the merits of plaintiffs' challenge to the definition. Jan. 8, 2015 Order. The parties were provided an opportunity to supplement their briefs should they deem it necessary, *id.*, which the Department did, Defs.' Supplemental Brief [Dkt. #31], and I heard oral argument on January 9, 2015. Jan. 9, 2015 Docket Entry.

## LEGAL STANDARD

On the merits, plaintiffs' motion is one for summary judgment on the administrative record. "Summary judgment is an appropriate mechanism for resolving cases involving administrative rulemaking on the record, particularly where, as here, the case turns chiefly on issues of statutory construction." *Indiv. Reference Servs. Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 22 (D.D.C. 2001) *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002); *see Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir.

1997).  Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Plaintiffs challenge an agency regulation promulgated through notice-and-comment rulemaking, so I must apply the familiar two-step *Chevron* analytical framework.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see United States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001).  At the first step, "the question [is] whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  If it is clear, Congressional intent must be given effect.  *Id*. at 842-43.  A court "employ[s] traditional tools of statutory construction," *id*. at 843 n.9, including examination of the statute's text, legislative history, structure, and purpose, *Bell Atl. Tel. Companies v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997), to determine Congressional intent.

"[I]f the statute is silent or ambiguous with respect to the specific issue," the agency is entitled to deference.  *Chevron*, 467 U.S. at 843.  If Congress explicitly delegates to an agency the authority to resolve an ambiguity or fill a gap, the agency's regulations doing so "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.  If an agency regulates under an implicit delegation of authority, a court must uphold the agency's interpretation unless it is unreasonable.  *Id*.

8

The companionship services exemption applies to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). There is, to be sure, ambiguity in the meaning of the term "companionship services," and Congress has explicitly delegated authority to the Department to define the term. But that does not grant it a blank check to do so in a way that contradicts the Act itself.[4]

The statutory language of the exemption makes clear that companionship services are services provided to elderly and disabled individuals who "are unable to care for themselves." *Id*. Now the Department is attempting to issue a regulation that would write out of the exemption the very "care" the elderly and disabled need, unless it were drastically limited in the quantity provided so as to be of little practical use.

In light of the statutory language, this case is resolved at *Chevron* Step I.[5] Although Congress has not defined the outer bounds of companionship services, it has

---

[4] The Department points to a phrase from my December 22, 2014, Opinion in which I recognize that Congress delegated to the Department authority to define the term "companionship services": "'[t]he Department, appropriately, has filled those [statutory] gaps through regulations, including revised definitions for . . . "companionship services."'" Defs.' Opp'n to Pls.' Req. for Preliminary Injunction at 1 ("Defs.' Opp'n") [Dkt. #27] (quoting Dec. 22 Op. at 11-12) (alterations in defendants' brief). The Department neglects, however, to mention the footnote appended to the end of the sentence from which it pulls its quote, in which I explicitly note that "[t]he Department's effort to narrow the scope of those exempted services through its new changes to the regulatory definitions of statutory terms is not before me at this point." Dec. 22 Op. at 12 n.9; *see also id*. at 7 n.7 (recognizing that "[p]laintiffs also challenge the new rule's revised 'companionship services' definition in their Complaint, Compl. ¶¶ 34-39, but that issue is not before the Court"). No one—Court or plaintiffs—disputes that it is appropriate for the Department to issue a regulation defining "companionship services," or even that it may revise that regulation. But that definitional authority remains bounded by the statute the regulation implements, and is irrelevant when it comes to issues on which Congress has spoken.

[5] Even if one were to take the Department's position that the explicit delegation of authority to define "companionship services" automatically moves the question along to the second step of *Chevron*, where the agency is entitled to deference, *see* Defs.' Opp'n at 17, the distinction is academic. It is "manifestly

spoken on the precise issue presented here, which is whether that definition must include, in a meaningful way, the provision of care. The answer is yes. There are ambiguities in the statute, but this is not one of them. The exemption clearly targets workers who provide services to those who need care. Indeed, what services could possibly be required more by those "unable to care for themselves" than *care* itself? Limiting that care to only 20 percent of a worker's total hours defies logic,[6] and Congressional intent.

The Department repeatedly titles companions "elder sitters" and likens them to babysitters. *See* Defs.' Opp'n at 19-23. The legislative history indicates that this analogy was indeed in the minds of legislators at the time of the exemption's passage. *See, e.g.*, 119 Cong. Rec. at 24,801 (Statements of Sen. Burdick and Sen. Williams). But what the Department does not seem to realize, however, is that this analogy actually supports plaintiffs' position. Babysitters—good ones, at least—do not simply sit and stare at their charges, ready to call for assistance if something should go wrong. And their duties can extend far beyond playing games or making conversation. Babysitters provide care—assistance with activities of daily living and instrumental activities of daily living—to the extent the children they are watching are unable to care for themselves. A babysitter, particularly one sitting for an infant or toddler, often is responsible for feeding, bathing, and changing the clothes and diapers of the child. Babysitters regularly prepare food for

---

contrary to the statute," *Chevron*, 467 U.S. at 844, to define the "companionship services" term of this statute as including such a stringent limitation on a companion's ability to provide care.

[6] The Department, apparently, chose 20 percent as the limit because it had used that number as a limit in other FLSA regulations, 78 Fed. Reg. 60,467-68—not because of any relationship to clients' needs or the way services are provided.

their charges and drive them to places they cannot reach on their own.  If the Department

believes otherwise, its staff needs to spend some more time with children!

It is important to note, as I did in my previous Opinion, that Congress did *not* limit

the companionship services exemption to services provided on a "casual basis," as it did

for its babysitter exemption within the very same statutory provision.  29 U.S.C.

§ 213(a)(15); *see* Dec. 22 Op. at 13.  Indeed, when discussing the companionship services

exemption in particular, legislators expressed their concern with the ability of their

constituents to pay for in-home care provided on a regular basis.[7]  119 Cong. Rec.

24,797-98 (1973) (statements of Sen. Dominick and Sen. Johnston).

Home care workers have been providing care to the elderly and disabled, under the

umbrella of the companionship services exemption, since the enactment of the 1974

Amendments.  Here, I am once again faced with a long-standing regulation left

untouched by Congress for 40 years.  *See* Dec. 22 Op. at 16.  Congress has made

numerous changes to the FLSA exemptions—including, notably, the addition of a

---

[7] The Department focuses on Congress's goal in expanding FLSA protections to domestic employees via the 1974 Amendments, but for the most part ignores the reality that Congress also had reasons for exempting certain categories of workers from that expansion. Defs.' Opp'n at 18-19.  Defendants emphasize a statement in the Congressional committee reports to argue that "Congress sought to 'include within the coverage of the Act *all* employees whose vocation is domestic service.'" Defs.' Opp'n at 18-19 (quoting Senate Report No. 93-690, p. 20 (1974)) (emphasis added by defendants); *see also* House Report No. 93-913 (1974).  They appear to believe that Congress made its decisions where to draw exemption lines by looking only at whether the workers at the time considered their work to be their vocation, rather than at what type of work was being done by each category of employee and the circumstances of their employment.  That cannot be true, when one of the categories Congress exempted was *live-in* domestic workers!  It strains credulity to contend that Congress believed that all workers who reside in the household in which they are employed do not consider their work to be their vocation.  And although Congress did observe that "[p]eople who will be employed in the excluded [casual babysitting and companionship services] categories are not regular bread-winners or responsible for their families' support," Senate Rep. No. 93-690, p. 20 (1974); *see also* House Report No. 93-913, such an observation regarding the then-current state of the labor market indicates neither why Congress exempted companionship providers, nor that a future change in the state of the industry would warrant a change in what services an exempt companion may provide.

definition of "fire protection activities" into the statute at 29 U.S.C. § 203(y), specifically

to clarify the meaning of the overtime exemption codified at 29 U.S.C. § 213(b)(20).  Act

of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731 ("An Act To amend the Fair

Labor Standards Act of 1938 to clarify the overtime exemption for employees engaged in

fire protection activities.").  But Congress has not shown one iota of interest in cabining

the definition of companionship services, which has been interpreted by the Department

the same way for 40 years.  Indeed, not a single one of the six bills introduced in

Congress after the Supreme Court's decision in *Coke* addressed the definition of

"companionship services."  *See* Dec. 22 Op. at 5-6, 17.  "It is well established that when

Congress revisits a statute giving rise to a longstanding administrative interpretation

without pertinent change, the 'congressional failure to revise or repeal the agency's

interpretation is persuasive evidence that the interpretation is the one intended by

Congress.'"  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)

(quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974)).

    Thus, I cannot help but conclude that Congress's intent in 1974 to exempt from

minimum and overtime wage requirements domestic workers providing services,

including care to the elderly and disabled, is still as clear today as it was forty years ago.

Here, yet again, the Department is trying to do through regulation what must be done

through legislation.  *See* Dec. 22 Op. at 17 and n.12.  And, therefore, it too must be

vacated.

## CONCLUSION

Millions of American families each day struggle financially to care for their loved ones who are either too elderly or infirm to care for themselves. Congress is now, and has been, keenly aware of that struggle for many decades. Indeed, as the baby-boomer generation gets older, that struggle will be shared by an ever-increasing number of families. The exemption Congress has provided third-party employers and individual families with respect to minimum and overtime wages has been, and is, a central component of Congress's effort to insure that as many of those families as possible will be able to survive that struggle. While the Department of Labor's concern about the wages of home care providers is understandable, Congress is the appropriate forum in which to debate and weigh the competing financial interests in this very complex issue affecting so many families. Redefining a 40-year-old exemption out of existence may be satisfyingly efficient to the Department of Labor, but it strikes at the heart of the balance of power our Founding Fathers intended to rest in the hands of those who must face the electorate on a regular basis.

Thus, for all of the foregoing reasons, plaintiffs' motion for summary judgment [Dkt. #23] is GRANTED. Accordingly, the United States Department of Labor's regulation defining "companionship services," promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.6, is hereby VACATED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

13