APPEAL,STAYED,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:14–cv–00967–RJL</u>
### *Internal Use Only*

HOME CARE ASSOCIATION OF AMERICA et al v. WEIL et al

Assigned to: Judge Richard J. Leon

Case in other court:  15–05018

Cause: 29:216 Fair Labor Standards Act

Date Filed: 06/06/2014
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **HOME CARE ASSOCIATION OF AMERICA** | represented by | **Maurice Baskin**<br>LITTLER MENDELSON, P.C.<br>1150 17th Street NW<br>Suite 900<br>Washington, DC 20036<br>(202) 772–2526<br>Fax: (202) 318–4048<br>Email: <u>mbaskin@littler.com</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William Alexander Dombi**<br>CENTER FOR HEALTH CARE LAW<br>228 Seventh Street, SE<br>Washington, DC 20003–4306<br>(202) 547–5262<br>Fax: 202–547–7126<br>Email: <u>wad@nahc.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **INTERNATIONAL FRANCHISE ASSOCIATION** | represented by | **Maurice Baskin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William Alexander Dombi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE** | represented by | **Maurice Baskin**<br>(See above for address) |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Alexander Dombi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | |
|---|---|
| **DAVID WEIL**<br>*sued in his official capacity,*<br>*Administrator, Wage & Hour Division* | represented by **Julie Shana Saltman**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Avenue, NW<br>Suite 7111<br>Washington, DC 20530<br>(202) 532–4252<br>Email: julie.saltman@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | |
|---|---|
| **THOMAS E. PEREZ**<br>*sued in his official capacity, Secretary* | represented by **Julie Shana Saltman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | |
|---|---|
| **UNITED STATES DEPARTMENT OF LABOR** | represented by **Julie Shana Saltman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/06/2014 | 1 | | COMPLAINT against THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL ( Filing fee $ 400 receipt number 0090–3740270) filed by HOME CARE ASSOCIATION OF AMERICA, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE, INTERNATIONAL FRANCHISE ASSOCIATION. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Baskin, Maurice) (Entered: 06/06/2014) |
| 06/06/2014 | 2 | | Corporate Disclosure Statement by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. (Baskin, Maurice) (Entered: 06/06/2014) |
| 06/06/2014 | 3 | | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by William Alexander Dombi on behalf of HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE (Dombi, William) (Entered: 06/06/2014) |
| 06/06/2014 | | Case Assigned to Judge Richard J. Leon. (md, ) (Entered: 06/09/2014) |
| 06/09/2014 | 4 | STANDING ORDER. Signed by Judge Richard J. Leon on 6/9/2014. (lcrjl3) (Entered: 06/09/2014) |
| 06/11/2014 | 5 | SUMMONS (5) Issued Electronically as to THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Summons 2nd, # 2 Summons 3rd, # 3 Summons 4th, # 4 Summons 5th, # 5 Notice of Consent, # 6 Consent Form)(md, ) (Entered: 06/11/2014) |
| 07/10/2014 | 6 | STIPULATION *to Briefing Schedule* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Saltman, Julie) (Entered: 07/10/2014) |
| 07/22/2014 | 7 | ORDER: Upon consideration of the parties' Joint Proposed Expedited Briefing Schedule; it is hereby ordered that plaintiff's dispositive motion due by 8/1/2014. Defendant's opposition and cross motions due by 8/18/2014. Plaintiff's response to cross motion and reply due by 08/27/14. Defendant's reply due by 09/05/14. Signed by Judge Richard J. Leon on 7/20/14. (tb, ) (Entered: 07/23/2014) |
| 07/23/2014 | 8 | NOTICE of Appearance by Julie Shana Saltman on behalf of THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL (Saltman, Julie) (Entered: 07/23/2014) |
| 08/01/2014 | 9 | MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint* by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE (Attachments: # 1 Memorandum in Support, # 2 Affidavit, # 3 Text of Proposed Order)(Baskin, Maurice) (Entered: 08/01/2014) |
| 08/11/2014 | 10 | Unopposed MOTION for Extension of Time to *File Cross−Motion for Summary Judgment*, Unopposed MOTION for Extension of Time to File Response/Reply as to 9 MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL (Attachments: # 1 Text of Proposed Order)(Saltman, Julie) (Entered: 08/11/2014) |
| 08/15/2014 | 11 | NOTICE of Proposed Order *Revised* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL re 10 Unopposed MOTION for Extension of Time to *File Cross−Motion for Summary Judgment*Unopposed MOTION for Extension of Time to File Response/Reply as to 9 MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint* (Saltman, Julie) (Entered: 08/15/2014) |
| 08/18/2014 | 12 | ORDER Granting 10 Defendants' Unopposed Motion for Extension of Time. Defendants' cross−motion for summary judgment as to Counts I and II (in lieu of an answer) and opposition is due by 8/22/2014. Plaintiff's opposition to Defendants' cross−motion and reply in support of their dispositive motion is due by 9/2/2014. Defendants' reply in support of their motion is due by 9/9/2014. |

| | | |
|---|---|---|
| | | Signed by Judge Richard J. Leon on 08/17/2014. (jth) (Entered: 08/18/2014) |
| 08/22/2014 | 13 | MOTION to Dismiss , MOTION for Summary Judgment *in the alternative* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Saltman, Julie) (Entered: 08/22/2014) |
| 08/22/2014 | 14 | Memorandum in opposition to re 9 MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint* filed by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Saltman, Julie) (Entered: 08/22/2014) |
| 09/02/2014 | 15 | REPLY to opposition to motion re 9 MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint and Opposition to Defendants' Cross−Motion* filed by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. (Baskin, Maurice) (Entered: 09/02/2014) |
| 09/02/2014 | 16 | Memorandum in opposition to re 13 MOTION to Dismiss MOTION for Summary Judgment *in the alternative and Reply to Defendants' Opposition to Plaintiffs' Cross−Motion* filed by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. (Baskin, Maurice) (Entered: 09/02/2014) |
| 09/09/2014 | 17 | ADMINISTRATIVE RECORD *Joint Appendix of Evidence Relied on By the Parties With Respect to Dispositive Motions* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Attachments: # 1 Appendix Tab A, # 2 Appendix Tab B, # 3 Appendix Tab C, # 4 Appendix Tab D, # 5 Appendix Tab E, # 6 Appendix Tab F, # 7 Appendix Tab G, # 8 Appendix Tab H, # 9 Appendix Tab I, # 10 Appendix Tab J, # 11 Appendix Tab K, # 12 Appendix Tab L)(Saltman, Julie) (Entered: 09/09/2014) |
| 09/09/2014 | 18 | REPLY to opposition to motion re 13 MOTION to Dismiss MOTION for Summary Judgment *in the alternative* filed by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Saltman, Julie) (Entered: 09/09/2014) |
| 10/15/2014 | 19 | NOTICE OF SUPPLEMENTAL AUTHORITY by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE (Attachments: # 1 Supplement Oct. 9,2014 DOL Policy Statement)(Baskin, Maurice) (Entered: 10/15/2014) |
| 10/22/2014 | 20 | RESPONSE re 19 NOTICE OF SUPPLEMENTAL AUTHORITY filed by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Saltman, Julie) (Entered: 10/22/2014) |
| 11/10/2014 | | Set/Reset Hearings: Motion Hearing set for 11/19/2014 02:30 PM in Courtroom 18 before Judge Richard J. Leon. (tb, ) (Entered: 11/10/2014) |
| 11/19/2014 | | Minute Entry: Motion Hearing held on 11/19/2014 before Judge Richard J. Leon: re 9 MOTION for Summary Judgment *as to Counts I and II of Plaintiffs' Complaint* filed by INTERNATIONAL FRANCHISE ASSOCIATION, HOME |

| | | | |
|---|---|---|---|
| | | | CARE ASSOCIATION OF AMERICA, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE and 13 MOTION to Dismiss MOTION for Summary Judgment *in the alternative* filed by DAVID WEIL, THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR; motions heard and taken under advisement. (Court Reporter Bill Zaremba) (tb, ) (Entered: 11/20/2014) |
| 12/22/2014 | 21 | 11 | MEMORANDUM OPINION re: Plaintiffs' 9 Motion for Expedited Partial Summary Judgment and Defendants' 13 Motion to Dismiss or in the Alternative Cross–Motion for Summary Judgment. Signed by Judge Richard J. Leon on 12/22/2014. (tcr) (Entered: 12/22/2014) |
| 12/22/2014 | 22 | 29 | ORDER: For the reasons set forth in the Memorandum Opinion entered this date, it is this 22nd Day of December, 201, hereby ORDERED that Plaintiffs' Motion for Expedited Partial Summary Judgment [DKT.#9] is GRANTED; and it is further ORDERED that the Defendants' Motion to Dismiss or in the Alternative Cross–Motion for Summary Judgment [DKT.#13] is DENIED; it is further ORDERED that the Department of Labor's Third Party Employer Regulation promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, is VACATED. Signed by Judge Richard J. Leon on 12/22/2014. (tcr) (Entered: 12/22/2014) |
| 12/24/2014 | 23 | | Emergency MOTION to Stay *Agency Action* by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Affidavit Dombi Affidavit, # 4 Affidavit Darling Affidavit, # 5 Affidavit Bucklnad Affidavit, # 6 Affidavit Bruffett Affidavit)(Baskin, Maurice) (Entered: 12/24/2014) |
| 12/24/2014 | 24 | | Unopposed MOTION Telephonic Scheduling Conference re 23 Emergency MOTION to Stay *Agency Action* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL (Attachments: # 1 Text of Proposed Order)(Saltman, Julie) (Entered: 12/24/2014) |
| 12/26/2014 | 25 | | RESPONSE re 24 Unopposed MOTION Telephonic Scheduling Conference re 23 Emergency MOTION to Stay *Agency Action* filed by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. (Baskin, Maurice) (Entered: 12/26/2014) |
| 12/26/2014 | | | MINUTE SCHEDULING ORDER: It is hereby ORDERED that an in–chambers scheduling conference is set for Monday, December 29, 2014, at 3:00 p.m. Signed by Judge Richard J. Leon on 12/26/2014. (lcrjl3) (Entered: 12/26/2014) |
| 12/29/2014 | | | Set/Reset Hearings: A Hearing in this matter is scheduled for 12/31/2014 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 12/29/2014) |
| 12/31/2014 | | | Minute Entry for proceedings held before Judge Richard J. Leon: Motion Hearing held on 12/31/2014 re: Plaintiffs' 23 Emergency Motion to Stay. Stay to be Issued (ORDER FORTHCOMING) Government Response to the Request for Preliminary Injunction is due by 1/5/2015, Plaintiffs' Reply is due by 1/7/2015, A Hearing on the request for Preliminary Injunction is set for 1/9/2015 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. (Court Reporter Janice |

| | | |
|---|---|---|
| | | Dickman) (jth) (Entered: 12/31/2014) |
| 12/31/2014 | 26 | ORDER that Plaintiffs' Emergency Motion for Temporary Stay of Agency Action [Dkt. #23] is GRANTED to the extent it requests, in essence, a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b); and it is further ORDERED that the Department of Labor's regulation defining "Companionship services," promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.6, which is due to go into efffect tomorrow, January 1, 2015, is hereby STAYED temporarily from going into effect until January 15, 2015. Signed by Judge Richard J. Leon on 12/31/2014. (jth) (Entered: 12/31/2014) |
| 01/05/2015 | 27 | Memorandum in opposition to re 23 Emergency MOTION to Stay *Agency Action* filed by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Saltman, Julie) (Entered: 01/05/2015) |
| 01/07/2015 | 28 | REPLY to opposition to motion re 23 Emergency MOTION to Stay *Agency Action and for Preliminary Injunction* filed by HOME CARE ASSOCIATION OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. (Attachments: # 1 Affidavit Cardillo Affidavit, # 2 Affidavit Foss Affidavit, # 3 Affidavit Salerno Affidavit)(Baskin, Maurice) (Entered: 01/07/2015) |
| 01/07/2015 | 29 | NOTICE *of Exhibit* by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL re 27 Memorandum in Opposition, (Attachments: # 1 Exhibit 10)(Saltman, Julie) (Entered: 01/07/2015) |
| 01/08/2015 | 30 | MEMORANDUM ORDER: Having reviewed the briefing submitted by the government and the plaintiff, and in light of the expiration of the temporary stay next week; it is hereby ordered that the preliminary injunction hearing is CONSOLIDATED with the trial on the merits; it is further ordered that the parties shall have until 12:00 p.m. on Friday, January 9, 2015, to submit supplemental briefing on the merits as they see necessary; and it is further ordered that the Court will hear oral argument on the merits on Friday, January 9, 2015 at 2:30 p.m. in Courtroom 18 before Judge Richard J. Leon. Signed by Judge Richard J. Leon on 01/08/15. SEE ORDER FOR FULL DETAILS. (tb, ) (Entered: 01/08/2015) |
| 01/09/2015 | 31 | SUPPLEMENTAL MEMORANDUM to re 30 Order, Set Deadlines, Set Hearings,,,,,, filed by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL. (Saltman, Julie) (Entered: 01/09/2015) |
| 01/09/2015 | | Minute Entry: Motion Hearing held on 1/9/2015 before Judge Richard J. Leon: re 23 Emergency MOTION to Stay *Agency Action* filed by INTERNATIONAL FRANCHISE ASSOCIATION, HOME CARE ASSOCIATION OF AMERICA, NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE. Motion heard and taken under advisement. Ruling to be announce in open court on next Wednesday, January 14, 2015. (Court Reporter Bill Zaremba) (ztb, ) (Entered: 01/09/2015) |
| 01/13/2015 | | Set/Reset Hearings: Status Conference set for 1/14/2015 03:00 PM in Courtroom 18 before Judge Richard J. Leon. (tb, ) (Entered: 01/13/2015) |

| 01/14/2015 | | | Set/Reset Hearings: Status Conference RESET for 1/14/2015 04:00 PM in Courtroom 18 before Judge Richard J. Leon. (tb, ) (Entered: 01/14/2015) |
|---|---|---|---|
| 01/14/2015 | 32 | 30 | MEMORANDUM AND OPINION. Signed by Judge Richard J. Leon on 01/14/15. (tb, ) (Entered: 01/14/2015) |
| 01/14/2015 | 33 | 43 | ORDER: For the reasons set forth in the Memorandum Opinion entered this date, it is hereby ordered that plaintiff's 23 Motion for Summary Judgment is GRANTED; and it is further ordered that the Department of Labor's regulation defining " companionship services, promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. Section 552.6 is VACATED. Signed by Judge Richard J. Leon on 01/14/15. (tb, ) (Entered: 01/14/2015) |
| 01/14/2015 | | | Minute Entry: Status Conference held on 1/14/2015 before Judge Richard J. Leon: Oral ruling in open court. (Court Reporter Bill Zaremba) (tb, ) (Entered: 01/16/2015) |
| 01/16/2015 | 34 | | Unopposed MOTION for Entry of Final Judgment by THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL (Attachments: # 1 Text of Proposed Order)(Saltman, Julie) (Entered: 01/16/2015) |
| 01/20/2015 | 35 | | TRANSCRIPT OF PROCEEDINGS before Judge Richard J. Leon held on December 31, 2014; Page Numbers: 24. Date of Issuance: January 20, 2014. Court Reporter/Transcriber Jan Dickman, Telephone number (202)354–3267, Court Reporter Email Address : JaniceDickmanDCD@gmail.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/10/2015. Redacted Transcript Deadline set for 2/20/2015. Release of Transcript Restriction set for 4/20/2015.(Dickman, Janice) (Entered: 01/20/2015) |
| 01/22/2015 | 36 | 8 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 33 Order on Motion to Stay, 22 Order,, by UNITED STATES DEPARTMENT OF LABOR, DAVID WEIL, THOMAS E. PEREZ. Fee Status: No Fee Paid. Parties have been notified. (Saltman, Julie) (Entered: 01/22/2015) |
| 01/23/2015 | | | USCA Case Number 15–5018 for 36 Notice of Appeal to DC Circuit Court filed by DAVID WEIL, THOMAS E. PEREZ, UNITED STATES DEPARTMENT OF LABOR. (erd) (Entered: 01/23/2015) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
HOME CARE ASSOCIATION OF AMERICA, *et al.*    )
                                              )
          Plaintiffs,                         )
v.                                            )          Case No. 1:14-cv-00967
                                              )
DAVID WEIL, *et al.*                          )
                                              )
          Defendants.                         )
_____ )

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants, David Weil, in his official capacity as

Administrator of the Wage & Hour Division, United States Department of Labor; Thomas E.

Perez, in his official capacity as Secretary of the United States Department of Labor; and the

United States Department of Labor, hereby appeal to the United States Court of Appeals for the

District of Columbia Circuit the Court's December 22, 2014 Order, ECF No. 22, and January 14,

2015 Order, ECF No. 33.

Respectfully submitted January 22, 2015,

M. PATRICIA SMITH                 JOYCE R. BRANDA
Solicitor of Labor                Acting Assistant Attorney General

JENNIFER S. BRAND                 RONALD C. MACHEN, JR.
Associate Solicitor               United States Attorney

PAUL L. FRIEDEN                   JUDRY L. SUBAR
Counsel for Appellate Litigation  Assistant Branch Director

MELISSA A. MURPHY                   _/s/ Julie S. Saltman_____ _
Senior Attorney                   JULIE S. SALTMAN (DC Bar No. 975015)
                                  Trial Attorney
SARAH K. MARCUS                   United States Department of Justice
Attorney                          Civil Division, Federal Programs Branch
U.S. Department of Labor          20 Massachusetts Avenue N.W., Room 7111

200 Constitution Ave NW, N-2716    Washington, D.C.  20530
Washington, DC  20210    Tel: (202) 532-4252
    Fax: (202) 616-8470
    Email: Julie.saltman@usdoj.gov

Attorneys for Defendants

2

### CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2015, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

_/s/ Julie S. Saltman_____
JULIE S. SALTMAN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC 2 2 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| **HOME CARE ASSOCIATION OF AMERICA, *et al.*,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Case No. 14-cv-967 (RJL)** ) |
| **DAVID WEIL, *et al.*,** | ) ) |
| **Defendants.** | ) ) |

**MEMORANDUM OPINION**
(December 22, 2014) [Dkt. ##9, 13]

For over forty years, Congress has exempted third-party providers of home care services from having to pay either minimum or overtime wages to their employees who provide domestic companionship services to seniors and individuals with disabilities, or to pay overtime wages to live-in domestic service employees. On October 1, 2013, however, the Department of Labor issued a new regulation that takes these longstanding exemptions away from third-party employers.

Plaintiffs Home Care Association of America, the International Franchise Association, and National Association for Home Care & Hospice (together, "plaintiffs") bring this action under the Administrative Procedure Act, 5 U.S.C. §§ 701-06, against defendants David Weil, in his official capacity as Administrator of the United States Department of Labor's Wage and Hour Division; Thomas E. Perez, in his official capacity as the Secretary of the Department of Labor; and the Department of Labor itself (together, "defendants" or "the Department"). Compl. ¶ 1 [Dkt. #1]. Plaintiffs challenge

1

this new Department of Labor regulation as an arbitrary and capricious exercise of authority inconsistent with Congress's language and intent. *See generally* Compl. Indeed, plaintiffs contend, *inter alia*, that if this new rule, which goes into effect on January 1, 2015, is allowed to stand, it will have a destabilizing impact on the entire home care industry and will adversely affect access to home care services for millions of the elderly and infirm. *See* Compl. ¶ 4.

Before me now are plaintiffs' motion for partial summary judgment on Counts I and II of their Complaint and defendants' motion to dismiss, or, in the alternative, for summary judgment. Pls.' Mot. for Expedited Partial Summ. J. ("Pls.' Mot.") [Dkt. #9]; Defs.' Mot. to Dismiss or in the Alternative Cross-Mot. for Summ. J. ("Defs.' Mot.") [Dkt. #13].[1] After consideration of the parties' pleadings, the arguments of counsel, the relevant law, and the entire record in this case, plaintiffs' motion for partial summary judgment is GRANTED, defendants' motion is DENIED, and the Department's revised Third Party Employer regulation scheduled to go into effect on January 1, 2015, is VACATED.

## BACKGROUND

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, first passed in 1938, obligates employers to pay covered employees minimum wage for all hours worked and overtime wages for hours worked in excess of 40 in a week, *id.* §§ 206-07.

---

[1] Defendants title Docket Entry 13 as "Defendants' Combined Memorandum in Support of their Motion to Dismiss or in the Alternative their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment," which is the same title found on Docket Entry 13-1. It is clear from the context, however, that Docket Entry 13 is the defendants' motion and 13-1 is their memorandum in support.

2

Congress amended the FLSA in 1974 in part to extend certain labor protections, including the provision of minimum and overtime wages, to domestic service employees.[2] Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 7, 88 Stat. 55, 62; *see* 29 U.S.C. § 201 (finding that domestic service employment affects commerce); *id.* § 206(f) (extending minimum wage protection); *id.* § 207(*l*) (extending overtime protections).

At the same time that it expanded FLSA coverage to domestic service employees, Congress included exemptions tied to certain types of domestic service work. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 7(b)(3)-(4), 88 Stat. 55, 62. In particular, the statute explains that its overtime and minimum wage requirements shall not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15) ("companionship services exemption"). Nor shall its overtime requirements apply to "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21) ("live-in domestic employee exemption"). The exemptions at issue here have remained in place since the passage of the 1974 Amendments, though FLSA exemptions have been amended since that time. *See, e.g.*, Act of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731 (defining "fire protection activities" to clarify an overtime exemption); Small

---

[2] Prior to the passage of these amendments, only those domestic service workers employed by a business large enough to be subject to the FLSA's enterprise coverage were included within the FLSA's protections. 39 Fed. Reg. 35,385; 78 Fed. Reg. 60,481.

3

Business Job Protection Act of 1996, Pub. L. No. 104-188, § 2105(a), 110 Stat. 1755, 1929 (adding an exemption under 29 U.S.C. § 213(a) for certain computer professionals); Act of Sept. 30, 1994, Pub. L. No. 103-329, § 633(d), 108 Stat. 2382, 2428 (adding an overtime and minimum wage exemption for certain criminal investigators).

Following the passage of the 1974 Amendments, the Department of Labor promulgated implementing regulations in 1975. 40 Fed. Reg. 7404. Of interest here, the regulations focus on the employees and the nature of the employees' services. 40 Fed. Reg. 7405. The "term 'domestic service employment' refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed."[3] 40 Fed. Reg. 7405. Examples include cooks, housekeepers, caretakers, chauffeurs, and "babysitters employed on other than a casual basis." *Id.*

"Companionship services" means "those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs." *Id.* Services "which require and are performed by trained personnel," such as by nurses, do not qualify as "companionship services." *Id.* Finally, "live-in" workers are described as "[d]omestic service employees who reside in the household where they are employed." 40 Fed. Reg. 7406.

The regulations further specify that the exemptions cover companions and live-in domestic service workers who are "employed by an employer or agency other than the

---

[3] Although the phrase "of the person by whom he or she is employed" apparently conflicts with the current third-party regulation described below, the Supreme Court has held that this more general regulation does not invalidate the specific third-party regulation regarding companionship and live-in workers. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 169-70 (2007).

family or household using their services." 40 Fed. Reg. 7407.  Although the final 1975 regulations acknowledge that the Department contemplated the question of whether employees of third parties should be exempt under the statute, the Secretary "concluded that these exemptions can be available to such third party employers since they apply to 'any employee' engaged 'in' the enumerated services." 40 Fed. Reg. 7405.  The final regulation elaborated, "This interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions." *Id.* These regulations remained substantially unchanged until the rulemaking at issue here.[4] *See* 29 C.F.R. §§ 552.3, 552.6, 552.102, 552.109 (current regulations).

In 2007, the Supreme Court heard a challenge to the validity of the long-standing inclusion of employees paid by third parties within the companionship services exemption.  In *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), a domestic worker who had been employed by a third party to provide companionship services sued her former employer, claiming she was entitled to minimum and overtime wages under the FLSA.  With the United States defending the current regulation as amicus curiae, *see* Br. for the U.S. as Amicus Curiae Supporting Pet'rs, *Coke*, 551 U.S. 158 (No. 06-593), the Court concluded that the third-party rule was valid and binding, *Coke*, 551 U.S. at 162.

In response to the Supreme Court's decision in *Coke*, several bills were introduced in Congress seeking to abolish this exemption.  *See* "Direct Care Job Quality

---

[4] The Department previously considered changing the third-party employer regulation, *see* 66 Fed. Reg. 5481 (2001); 60 Fed. Reg. 46,797 (1995); 58 Fed. Reg. 69,310 (1993), but ultimately left the regulation in place until the rulemaking described below.

Improvement Act of 2011," H.R. 2341 and S. 1273, 112th Cong. (2011); "Direct Care Workforce Empowerment Act," H.R. 5902 and S. 3696, 111th Cong. (2010); "Fair Home Health Care Act of 2007," H.R. 3582 and S. 2061, 110th Cong. (2007).  Notwithstanding efforts by legislators in the majority party in both the House and Senate in three consecutive Congresses (110[th], 111[th], and 112[th]),[5] none of their bills ever generated sufficient support to get out of committee and to the floor of either house of Congress. *See generally* Congress.gov, https://www.congress.gov/ (searchable bill histories).

Undaunted by the Supreme Court's decision in *Coke*, and the utter lack of Congressional support to withdraw this exemption, the Department of Labor amazingly decided to try to do administratively what others had failed to achieve in either the Judiciary or the Congress.  The Department, in December 2011, published a Notice of Proposed Rulemaking to revise the FLSA domestic service regulations.  The Proposed Rule reworked the definitions of certain terms, including "domestic service employment" and "companionship services," and limited the companionship and live-in employee exemptions to workers employed by the family or household using the services, thereby excluding third-party employers from the exemptions.  76 Fed. Reg. 81,190-98, 81,244.

After receiving over 26,000 comments, 78 Fed. Reg. 60,460, including comments from plaintiffs, *see* J.A., Tabs D-J [Dkt. ##17-4–17-10], the Department published the Final Rule on October 1, 2013, 78 Fed. Reg. 60,454 ("new rule" or "new regulation").

---

[5] In the 112th Congress, the majority party remained the same in the Senate, but switched in the House from Democratic to Republican control.  Thus, Rep. Linda Sanchez's (D-CA-39) 2011 bill, H.R. 2341, was offered when she was in the minority party.

This new rule is scheduled to go into effect on January 1, 2015.[6] *Id.* Of relevance here, of course, is the new rule's effect on the application of the companionship services and live-in domestic service employee exemptions.[7] In a section entitled "Third Party Employment," it states that "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of the minimum wage and overtime exemption" provided by the statute, and "[t]hird party employers of employees engaged in live-in domestic service employment . . . may not avail themselves of the overtime exemption" provided by the statute. 78 Fed. Reg. 60,557.

Plaintiffs are trade associations that represent businesses employing workers currently subject to the FLSA companionship services and/or live-in domestic service exemptions. Compl. ¶¶ 9-11. As such, plaintiffs' member organizations include third-party employers who would not be able to "avail themselves" of the FLSA minimum and overtime wage exemptions for companions and live-in domestic service workers if the new rule were to go into effect.

Plaintiffs move for partial summary judgment on Counts I and II of their Complaint, which involve the new third-party regulation. Pls.' Mot.; Pls.' Mem. in Supp. of Mot. for Expedited Partial Summ. J. ("Pls.' Mem.") [Dkt. #9-1]. Defendants move to dismiss those counts, or, in the alternative, cross-move for summary judgment. Defs.'

---

[6] The Department has announced that it will not bring enforcement actions against any employers regarding violations of the FLSA resulting from the new rule for the first six months it is in effect. 79 Fed. Reg. 60,974-75.

[7] Plaintiffs also challenge the new rule's revised "companionship services" definition in their Complaint, Compl. ¶¶ 34-39, but that issue is not before the Court on this Motion for Expedited Partial Summary Judgment, Pls.' Mem. at 2 n.1. The change regarding third-party employment was not effected through any revision to the definition of "companionship services," or any other definition, for that matter. 78 Fed. Reg. 60,557.

Mot.; Defs.' Combined Mem. in Supp. of Mot. to Dismiss or in the Alternative Cross-

Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Mem.") [Dkt. #13-1].

I heard oral argument on the cross-motions on November 19, 2014.

## LEGAL STANDARD

Under Rule 56(a), summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). There is no fact-finding necessary here, as the parties rest this case on

the administrative record. "Summary judgment is an appropriate mechanism for

resolving cases involving administrative rulemaking on the record, particularly where, as

here, the case turns chiefly on issues of statutory construction." *Indiv. Reference Servs.*

*Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 22 (D.D.C. 2001) *aff'd sub nom. Trans Union LLC*

*v. FTC*, 295 F.3d 42 (D.C. Cir. 2002); *see Troy Corp. v. Browner*, 120 F.3d 277, 281

(D.C. Cir. 1997).

## ANALYSIS

### I.   *Chevron* Analysis

Plaintiffs first argue that the new rule conflicts with the plain language and

legislative history of the FLSA. Pls.' Mem. at 11-17. The Department disagrees and

counters that the new regulation is entitled to deference because it was promulgated

8

pursuant to the Department's rulemaking authority in this area and reflects a reasonable interpretation of the statute. Defs.' Mem. at 13-28.[8]

The Court analyzes a challenge to the validity of an agency-promulgated rule under the analytical framework laid out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The "inquiry under *Chevron* is rooted in statutory analysis and is focused on discerning the boundaries of Congress' delegation of authority to the agency." *Arent v. Shalala*, 70 F.3d 610, 615 (D.C. Cir. 1995). First, in what is referred to as *Chevron* Step I, the Court asks "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If so, the inquiry goes no further, because the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43.

If Congress has not spoken directly on the matter at issue, then the analysis moves to *Chevron* Step II—whether Congress has expressly or implicitly delegated authority to the agency to proceed with the force of law to implement a statutory provision or fill a statutory gap. If Congress expressly delegates "authority to the agency to elucidate a specific provision of the statute by regulation[, . . . the] regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 843-44. If Congress implicitly delegates authority to an agency, the Court defers to the

---

[8] Plaintiffs further argue that, should the Court find the new rule not to conflict with the statute, the Court nonetheless should set the rule aside as arbitrary and capricious because the Department of Labor did not provide an adequate justification for changing its long-established policy interpreting the FLSA. Pls.' Mem. at 17-22. The Department maintains that its use of the notice and comment rulemaking process and consideration of all of the relevant factors preclude plaintiffs from carrying their burden of proving the regulation is arbitrary and capricious. Defs.' Mem. at 29-35. For the reasons described below, I do not reach this *Chevron* Step II issue.

9

agency's construction of the statute so long as it is a reasonable one. *Id.* at 844; *see United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (explaining that "it can still be apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law"). However, a Court may not "*presume* a delegation of power from Congress absent an express *withholding* of such power." *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 659 (D.C. Cir.) *amended by* 38 F.3d 1224 (D.C. Cir. 1994). Unfortunately for the Department of Labor, I need not get to a Step II analysis in this case.

The essence of the first stage of the Court's inquiry is what questions did Congress already answer, and what questions did Congress leave up to the Department of Labor to answer? The Department has not and cannot argue that the statutory text *requires* a regulation that effectively excludes those workers employed by third parties from the exemption. The Supreme Court has rejected such a construction. *See Coke*, 551 U.S. 158. Instead, the Department rests its argument on delegated definitional authority and general implementation authority to answer what *it* considers to be open questions left by Congress. Defs.' Mem. at 15-16; Defs.' Reply in Supp. of Mot. to Dismiss or in the Alternative Cross-Mot. for Summ. J. at 1-2 ("Defs.' Reply") [Dkt. #18]. Plaintiffs, on the other hand, contend that the exemption enjoyed by third-party employers over the past forty years is *not* an open question and the Department of Labor cannot, therefore, manipulate its definitional authority in such a way as to effectively rewrite the exemption out of the law. Pls.' Mem. at 11-13. I agree with the plaintiffs.

10

The FLSA and its amendments undoubtedly envisioned that the Department of Labor would play some role in implementing the statutory scheme. The companionship services exemption itself directs the Secretary of Labor to "define[] and delimit[]" the statutory terms in the exemption, 29 U.S.C. § 213(a)(15), though, notably, no such express direction is stated in the live-in domestic employee exemption, 29 U.S.C. § 213(b)(21). Further, the 1974 Amendments authorize the Secretary of Labor in a general sense "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." Fair Labor Standards Amendments of 1974, Pub. L. 93-259, § 29(b), 88 Stat. 55, 76. However, an agency's general rulemaking authority does not necessarily mean that every specific rule the agency promulgates will be a valid exercise of that authority. *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006). Congress surely did not delegate to the Department of Labor here the authority to issue a regulation that transforms defining statutory terms into drawing policy lines based on who cuts a check rather than what work is being performed.

As stated above, Congress merely left a number of definitional gaps in the exemptions' statutory language, including regarding what companionship services are and what domestic service employment is. The Department, appropriately, has filled those gaps through regulations, including revised definitions for "domestic service

11

employment" and "companionship services" in the new rule scheduled to go into effect January 1, 2015.[9]

Once those definitional gaps were filled, however, the statutory loop was closed. The language of the exemption provisions is quite clear: "*any* employee" who is employed to provide companionship services, or who resides in the household in which he or she is employed to perform domestic services, is covered by the exemption. 29 U.S.C. § 213(a)(15), (b)(21) (emphasis added).  If an employee's work is encompassed within the statutory terms as defined by the regulations, the employer is not obligated to pay overtime and/or minimum wage.  This, indeed, is the natural reading of the statute.[10] There is no explicit—or implicit—delegation of authority to the Department to parse groups of employees based on the nature of their employer who otherwise fall within those definitions.

That Congress intended the exemption to apply to *all* employees who provide companionship and live-in domestic services is further evidenced by analyzing the surrounding exemption text. *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (explaining that a court must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose" (internal quotation marks omitted)).  In particular, Congress did not hesitate in other exemptions listed

---

[9] The Department's effort to narrow the scope of those exempted services through its new changes to the regulatory definitions of statutory terms is not before me at this point.

[10] The Department itself recognized this statutory reality in the past. "This language is naturally read to exempt any employee who provides companionship services to an aged or infirm individual in a private home. The statute does not draw any distinction between companions who are employed by the owners of the homes in which they are working and companions who are instead employed by third party employers." *See* U.S. Dep't of Labor, Wage and Hour Advisory Mem. No. 2005-1 (2005), *available at* http://www.dol.gov/whd/FieldBulletins/index.htm.

within Section 213 to make distinctions on the basis of who employs the employee. *See,
e.g.*, 29 U.S.C. § 213(a)(3) (exempting "any employee employed by an establishment
which is an amusement or recreational establishment, organized camp, or religious or
non-profit educational conference center" in certain circumstances); *id.* § 213(b)(3)
(exempting "any employee of a carrier by air"); *id.* § 213(b)(10) (exempting salesmen for
motor vehicles and certain other machinery, but only if employed by a certain type of
employer).

Further, in addition to exempting "any employee employed in domestic service
employment to provide companionship services for individuals who (because of age or
infirmity) are unable to care for themselves," Section 213(a)(15) itself also exempts "any
employee employed *on a casual basis* in domestic service employment to provide
babysitting services." *Id.* § 213(a)(15) (emphasis added).  To the extent that Congress
conceptualized companions as "elder sitters" analogous to baby sitters, as argued by the
Department, Defs.' Mem. at 7, it is clear that Congress recognized that one could "sit"
casually or on a more established basis—and chose to include *all* those providing
companionship services within the exemption.  The Department explicitly has
recognized, and continues to recognize in the new regulations, that "[t]he 'casual'
limitation does not apply to companion services."  29 C.F.R. § 55.106; 78 Fed. Reg.
60,557.

To say the least, where Congress wanted to draw a line based on the circumstances
surrounding an employee's employment rather than the type of services the employee
provides, it did so.  And Congress did not include a "casual basis," employer-based, or

13

any other modifier when exempting "any employee" providing companionship or live-in domestic services.

This, of course, makes sense. Congress was concerned with what services employees were providing, not whether money was routed through a third party on its way to the employee from the individual or family requiring assistance. Of particular concern here were the costs incurred by those in need of the types of services at issue. *See* 119 Cong. Rec. 24,797-98 (1973) (statements of Sen. Dominick and Sen. Johnston); *see also Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004) ("Congress created the 'companionship services' exemption to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." (internal quotation marks omitted)).

"Agencies are . . . 'bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.'" *Colo. River Indian Tribes*, 466 F.3d at 139 (quoting *MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 n.4 (1994)). Here, Congress has directed the Department of Labor to define statutory terms, and then include "any employee" who provides services according to those definitions within the scope of the exemptions. The focus is on the type of the services provided, not who pays the check. As such, Congress has clearly spoken on this issue, and the Department's new, conflicting rule therefore cannot survive.

14

**II.**   *Long Island Care at Home Ltd. v. Coke*

The Department argues that plaintiffs' *Chevron* Step I argument is foreclosed by the Supreme Court's decision in *Long Island Care at Home, Ltd. v. Coke*.  Defs.' Mem. at 9-21.  I could not disagree more.  As the plaintiffs contend, this argument turns the actual holding in that case on its head.

The Supreme Court stated at the outset of its *Coke* opinion:  "The question before us is whether, in light of the statute's text and history,  . . . the Department's [current] regulation is valid and binding.  We conclude that it is."  *Coke*, 551 U.S. at 162 (internal citation omitted).  The Supreme Court thus only considered the validity and binding nature of the previous, and still current, rule that interpreted the statutory definition of companion employees under Section 213(a)(15).

The Supreme Court did not consider the question with which I am presented by this new rule: whether the Department is authorized to craft a rule which prevents employers from "availing themselves" of the Act's statutory exemptions of their employees in a manner inconsistent with the plain language of Section 213?  To the extent the Supreme Court analyzed the statutory language of the exemption (rather than how different regulations interacted with one another), the Court focused on the Department's authority to define statutory terms, which is not the method by which the Department promulgated the new third-party employer regulation here.  *Id*. at 168 (explaining that it was "reasonable to infer . . . that Congress intended its broad grant of *definitional* authority to the Department to include the authority to answer these kinds of

15

questions" (emphasis added)).  And the Supreme Court did not consider the live-in domestic employee exemption *at all*.

Finally, in blessing the current companionship services regulation, the Supreme Court was not faced with a regulation that essentially would eviscerate a Congressionally-mandated exemption via a method Congress never envisioned.  By the Department's own numbers, approximately 90% of home health aides and personal care aides, which include those providing companionship services, are employed by third parties, rather than by the individual or family needing services.  Defs.' Reply at 10 n.4; *see* 78 Fed. Reg. 60,519-20.  Congress included the exemptions for a reason, and the Supreme Court's decision in *Coke* not only does not empower the Department to gut them, it does not grant the Department judicial cover for what can only be characterized as a wholesale arrogation of Congress's authority in this area!

## III.   Congressional Inaction

Although not alone dispositive, I cannot overlook the fact that Congress has revisited the FLSA many times since the 1974 Amendments, while the 1975 regulations have been in place.  Indeed, Congress has amended its statutory exemptions over the years in other ways, *see, e.g.*, Act of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731; Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 2105(a), 110 Stat. 1755, 1929, but has *not* altered the exemptions at issue here.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended

16

by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974)).

Following the *Coke* decision, Congress contemplated adjusting the statutory language of the companionship exemption at least three times, but never did so. *See* "Direct Care Job Quality Improvement Act of 2011," H.R. 2341 and S. 1273, 112th Cong. (2011); "Direct Care Workforce Empowerment Act," H.R. 5902 and S. 3696, 111th Cong. (2010); "Fair Home Health Care Act of 2007," H.R. 3582 and S. 2061, 110th Cong. (2007). Six bills were introduced—three in the House of Representatives, three in the Senate—over the course of three Congressional sessions, where the sponsors were in the majority party of each,[11] yet there was never sufficient support to get any of them to the floor of either house of Congress. This unequivocally represents a lack of Congressional intent to withdraw this exemption from third-party employers. The fact that the Department issued its Notice of Proposed Rulemaking *after* all six of these bills failed to move is nothing short of yet another thinly-veiled effort to do through regulation what could not be done through legislation.[12] Such conduct bespeaks an arrogance to not only disregard Congress's intent, but seize unprecedented authority to impose overtime

---

[11] *See* note 5, *supra.*

[12] *See, e.g., Am. Ins. Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, No. CV 13-00966 (RJL), 2014 WL 5802283 (D.D.C. Nov. 7, 2014) (vacating a HUD rule that expanded the Fair Housing Act to include disparate impact liability); *Avenal Power Ctr., LLC v. U.S. E.P.A.*, 787 F. Supp. 2d 1, 4 (D.D.C. 2011) (holding that regulatory review process did not relieve EPA Administrator of duty to comply with statutory deadline); *Smoking Everywhere, Inc. v. U.S. Food & Drug Admin.*, 680 F. Supp. 2d 62, 63 (D.D.C.) *aff'd sub nom. Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891 (D.C. Cir. 2010) (finding that FDA did not have authority under the Food, Drug, and Cosmetic Act to regulate electronic cigarettes as a drug-device combination).

17

and minimum wage obligations in defiance of the plain language of Section 213.  It cannot stand.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for partial summary judgment [Dkt. #9] is GRANTED and defendants' motion to dismiss, or, in the alternative, for summary judgment [Dkt. #13] is DENIED.  Accordingly, the United States Department of Labor's Third Party Employer regulation, promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, is hereby VACATED.  An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 2 2 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

HOME CARE ASSOCIATION OF )
AMERICA, *et al.,* )
       )
    Plaintiffs, )
       )
              v. )    **Case No. 14-cv-967 (RJL)**
       )
DAVID WEIL, *et al.,* )
       )
    Defendants. )

## ORDER

For the reasons set forth in the Memorandum Opinion entered this date, it is this

22ᴺᴰ day of December, 2014, hereby

**ORDERED** that Plaintiffs' Motion for Expedited Partial Summary Judgment

[Dkt. #9] is **GRANTED**; and it is further

**ORDERED** that the Defendants' Motion to Dismiss or in the Alternative Cross-

Motion for Summary Judgment [Dkt. #13] is **DENIED**; it is further

**ORDERED** that the Department of Labor's Third Party Employer Regulation

promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.109, is

**VACATED**.

RICHARD J. LEON
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOME CARE ASSOCIATION OF )
AMERICA, *et al.*, )
            )
      **Plaintiffs,** )
            )
          v. )     **Case No. 14-cv-967 (RJL)**
            )
DAVID WEIL, *et al.*, )
            )
      **Defendants.** )

**FILED**

**JAN 1 4 2015**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(January 14, 2015) [Dkt. #23]

On December 22, 2014, I issued an Opinion and Order vacating the Third Party

Employment provision of the Department of Labor's October 2013 regulations

implementing the 1974 Amendments to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201-19, because the rule conflicted with the statute itself. Dec. 22, 2014 Mem.

Op. ("Dec. 22 Op.") [Dkt. #21]; Dec. 22, 2014 Order [Dkt. #22]. Before me now is

another challenge by the same plaintiffs[1] to a different part of the same Labor Department

regulations. Specifically, plaintiffs seek to vacate the Department of Labor's narrowed

definition of "companionship services," Section 552.6 of the new rule, promulgated in 78

Fed. Reg. 60,557, and to be codified at 29 C.F.R. § 552.6.

On December 24, 2014, plaintiffs moved for emergency injunctive relief to keep

Section 552.6 from coming into effect on January 1, 2015. Emergency Mot. for

---

[1] Plaintiffs here are Home Care Association of America, International Franchise Association, and National Association for Home Care & Hospice (together, "plaintiffs"), and defendants are David Weil, in his official capacity as Administrator of the United States Department of Labor's Wage and Hour Division; Thomas E. Perez, in his official capacity as the Secretary of the Department of Labor; and the Department of Labor itself (together, "defendants" or "the Department"). Compl. ¶ 1 [Dkt. #1].

1

Temporary Stay of Agency Action and Req. for Expedited Consideration ("Pls.' Mot.")
[Dkt. #23]. I granted a Temporary Restraining Order on December 31, 2014, staying the
regulation from going into effect for fourteen days. Dec. 31, 2014 Order [Dkt. #26]. On
January 8, 2015, having reviewed the parties' extensive briefing, I consolidated plaintiffs'
motion for a preliminary injunction with consideration of the merits pursuant to Federal
Rule of Civil Procedure 65(a)(2). Jan. 8, 2015 Order [Dkt. #30]. The following day, I
heard oral arguments from the parties on the merits of plaintiffs' case, construing
plaintiffs' emergency motion as a motion for summary judgment on the merits. *See*
*Morris v. District of Columbia*, No. 14-cv-0338, 2014 WL 1648293, at \*2 (D.D.C. Apr.
25, 2014). After consideration of the parties' pleadings, the arguments of counsel, the
relevant law, and the entire record in this case, plaintiffs' motion is GRANTED and the
Department's revised companionship services regulation currently scheduled to go into
effect on January 15, 2015, is VACATED.

## BACKGROUND

This matter arises out of the same statutory and regulatory background described
more fully in my December 22, 2014 Opinion. *See* Dec. 22 Op. at 2-7. It concerns the
second prong of a two-prong attack on an exemption from paying overtime and minimum
wages: the companionship services exemption of the FLSA, codified at 29 U.S.C. §
213(a)(15). I vacated the first prong, the third-party employer exemption, two weeks
ago. *See* Dec. 22 Op. The second prong, of course, is the rewritten "companionship
services" definition. The companionship services exemption prevents employers,
whether third-party or not, from being required to pay minimum and overtime wages to

2

"any employee employed in domestic service employment to provide companionship

services for individuals who (because of age or infirmity) are unable to care for

themselves (as such terms are defined and delimited by regulations of the Secretary)."  29

U.S.C. § 213(a)(15).

The Department of Labor's implementing regulations promulgated in the

aftermath of the 1974 Amendments defined companionship services as follows:

> As used in section 13(a)(15) of the Act, the term
> "companionship services" shall mean those services which
> provide fellowship, care, and protection for a person who,
> because of advanced age or physical or mental infirmity,
> cannot care for his or her own needs. Such services may
> include household work related to the care of the aged or
> infirm person such as meal preparation, bed making, washing
> of clothes, and other similar services.

40 Fed. Reg. 7405.  The definition further specified that companionship services could

include limited general household work, not to exceed 20 percent of total weekly work

hours, but that it did *not* include services "which require and are performed by trained

personnel, such as a registered or practical nurse."  *Id.*  This definition remained

unchanged for the past 40 years.

In October 2013, however, after engaging in a full notice-and-comment

rulemaking process, the Department issued a Final Rule revising its domestic service

employment regulations at 29 C.F.R. Part 552.  78 Fed. Reg. 60,454 ("new rule" or "new

3

regulation"). The new rule, with the exception of those provisions challenged by plaintiffs, went into effect on January 1, 2015.[2]  *Id.*

Together with the eradication of the exemption for third-party employers, the Department issued a new, significantly-narrowed, definition of companionship services, Section 552.6 of the regulation. "As used in section 13(a)(15) of the Act, the term companionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 78 Fed. Reg. 60,557 (§ 552.6(a)). Although the new definition included the provision of care, the care provided had to be attendant to, and in conjunction with, the provision of fellowship and protection and it could *not* exceed 20 percent of the total hours worked per person and per workweek. *Id.* (§ 552.6(b)). "Care," as defined by the new regulation, is assistance with "activities of daily living" like dressing, feeding, and bathing, as well as assistance with "instrumental activities of daily living" that allow the client to live independently at home, like driving and meal preparation.[3]  *Id.*

---

[2] *See* pages 2 to 7 of my earlier opinion tracing the chronology up to and after the Supreme Court's decision in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007).  Dec. 22 Op. at 2-7.

[3] The Department's new regulatory definition reads in full:

§ 552.6 Companionship services.

(a) As used in section 13(a)(15) of the Act, the term companionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to

4

Plaintiffs are trade associations that represent third-party home care providers that employ millions of workers and provide approximately 90 percent of the services within the scope of the Department's long-standing definition of "companionship services." Compl. ¶¶ 9-11; Dec. 22 Op. at 16.  However, the majority of their services would fall outside of the confines of the new, narrower definition.  Pls.' Mem. in Supp. of Emergency Mot. for Temp. Stay of Agency Action at 5 ("Pls.' Mem.") [Dkt. #23-1].

In their Complaint, filed in June 2014, plaintiffs challenged both the new companionship services definition, Compl. ¶¶ 34-39 (Counts III and IV), and the Department's third-party employment regulation addressed in my previous opinion, *id.* ¶¶ 26-33 (Counts I and II).  Plaintiffs have requested that I vacate both of the challenged

---

accompany the person when outside of the home to monitor the person's safety and well-being.

(b) The term companionship services also includes the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek. The provision of care means to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care).

(c) The term companionship services does not include domestic services performed primarily for the benefit of other members of the household.

(d) The term companionship services does not include the performance of medically related services provided for the person. The determination of whether services are medically related is based on whether the services typically require and are performed by trained personnel, such as registered nurses, licensed practical nurses, or certified nursing assistants; the determination is not based on the actual training or occupational title of the individual performing the services.

78 Fed. Reg. 60,557.

provisions of the Department's new rule and enjoin the Department from enforcing them. Compl. at 15 (Prayer for Relief).

Until I vacated the third-party employment regulation on December 22, 2014, however, the third-party employers that comprise plaintiffs' associations were not permitted to "avail themselves" of the companionship services exemption, so changes to its definition would have no direct impact on plaintiffs' members. This new regulatory scheme, as envisioned by the Department, would require third-party employers to pay overtime and minimum wages to those providing services to the elderly and disabled regardless of whether or not those services were encompassed within the new definition. Plaintiffs contend that because they were concerned about their standing to challenge this narrowed definition, they did not move in August for summary judgment on the companionship services challenge when they sought relief on the third-party employment regulation. Pls.' Mem. at 9. But now that third-party employers maintain their ability to utilize the statutory exemption, the regulatory definition of "companionship services" will have a huge impact on plaintiffs' member organizations—as well as other employers and the clients the home care workers serve.

Thus, two days after my December 22, 2014, Opinion and Order vacating the new third-party employment regulation, plaintiffs filed an emergency motion seeking a temporary stay of the effective date of the revised companionship services definition. Pls.' Mot. They now argue that this new, narrower, regulation defining companionship services violates the language and legislative intent of FLSA Section 13(a)(15) because it "remov[es] 'care,' for all practical purposes, from the regulatory definition." Pls.' Mem.

6

at 3-4.  They further contend, in essence, that this new definition would have the very same impact on the industry as the third-party employment regulation I just vacated, by effectively repealing the statutory exemption.  Pls.' Mem. at 3.

Notwithstanding their public pronouncement of non-enforcement of this regulation for six months, 79 Fed. Reg. 60,974-75, the defendants declined to agree to a voluntary stay of the new definition's effective date.  Pls.' Mot. at 1.  Thus, with the January 1, 2015, effective date looming, I heard oral argument on December 31, 2014, granted a two-week temporary restraining order, Dec. 31, 2014 Order, and set an expedited briefing schedule for a preliminary injunction, Dec. 31, 2014 Docket Entry.  After reviewing the Department's opposition and the plaintiffs' reply, I decided to consolidate the preliminary injunction hearing with consideration of the merits of plaintiffs' challenge to the definition.  Jan. 8, 2015 Order.  The parties were provided an opportunity to supplement their briefs should they deem it necessary, *id.*, which the Department did, Defs.' Supplemental Brief [Dkt. #31], and I heard oral argument on January 9, 2015.  Jan. 9, 2015 Docket Entry.

## LEGAL STANDARD

On the merits, plaintiffs' motion is one for summary judgment on the administrative record.  "Summary judgment is an appropriate mechanism for resolving cases involving administrative rulemaking on the record, particularly where, as here, the case turns chiefly on issues of statutory construction." *Indiv. Reference Servs. Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 22 (D.D.C. 2001) *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002); *see Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir.

7

1997). Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Plaintiffs challenge an agency regulation promulgated through notice-and-comment rulemaking, so I must apply the familiar two-step *Chevron* analytical framework. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see United States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001). At the first step, "the question [is] whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If it is clear, Congressional intent must be given effect. *Id*. at 842-43. A court "employ[s] traditional tools of statutory construction," *id*. at 843 n.9, including examination of the statute's text, legislative history, structure, and purpose, *Bell Atl. Tel. Companies v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997), to determine Congressional intent.

"[I]f the statute is silent or ambiguous with respect to the specific issue," the agency is entitled to deference. *Chevron*, 467 U.S. at 843. If Congress explicitly delegates to an agency the authority to resolve an ambiguity or fill a gap, the agency's regulations doing so "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844. If an agency regulates under an implicit delegation of authority, a court must uphold the agency's interpretation unless it is unreasonable. *Id*.

8

The companionship services exemption applies to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). There is, to be sure, ambiguity in the meaning of the term "companionship services," and Congress has explicitly delegated authority to the Department to define the term. But that does not grant it a blank check to do so in a way that contradicts the Act itself.[4]

The statutory language of the exemption makes clear that companionship services are services provided to elderly and disabled individuals who "are unable to care for themselves." *Id.* Now the Department is attempting to issue a regulation that would write out of the exemption the very "care" the elderly and disabled need, unless it were drastically limited in the quantity provided so as to be of little practical use.

In light of the statutory language, this case is resolved at *Chevron* Step I.[5] Although Congress has not defined the outer bounds of companionship services, it has

---

[4] The Department points to a phrase from my December 22, 2014, Opinion in which I recognize that Congress delegated to the Department authority to define the term "companionship services": "'[t]he Department, appropriately, has filled those [statutory] gaps through regulations, including revised definitions for . . . "companionship services."'" Defs.' Opp'n to Pls.' Req. for Preliminary Injunction at 1 ("Defs.' Opp'n") [Dkt. #27] (quoting Dec. 22 Op. at 11-12) (alterations in defendants' brief). The Department neglects, however, to mention the footnote appended to the end of the sentence from which it pulls its quote, in which I explicitly note that "[t]he Department's effort to narrow the scope of those exempted services through its new changes to the regulatory definitions of statutory terms is not before me at this point." Dec. 22 Op. at 12 n.9; *see also id.* at 7 n.7 (recognizing that "[p]laintiffs also challenge the new rule's revised 'companionship services' definition in their Complaint, Compl. ¶¶ 34-39, but that issue is not before the Court"). No one—Court or plaintiffs—disputes that it is appropriate for the Department to issue a regulation defining "companionship services," or even that it may revise that regulation. But that definitional authority remains bounded by the statute the regulation implements, and is irrelevant when it comes to issues on which Congress has spoken.

[5] Even if one were to take the Department's position that the explicit delegation of authority to define "companionship services" automatically moves the question along to the second step of *Chevron*, where the agency is entitled to deference, *see* Defs.' Opp'n at 17, the distinction is academic. It is "manifestly

9

spoken on the precise issue presented here, which is whether that definition must include, in a meaningful way, the provision of care.  The answer is yes.  There are ambiguities in the statute, but this is not one of them.  The exemption clearly targets workers who provide services to those who need care.  Indeed, what services could possibly be required more by those "unable to care for themselves" than *care* itself?  Limiting that care to only 20 percent of a worker's total hours defies logic,[6] and Congressional intent.

The Department repeatedly titles companions "elder sitters" and likens them to babysitters.  *See* Defs.' Opp'n at 19-23.  The legislative history indicates that this analogy was indeed in the minds of legislators at the time of the exemption's passage.  *See, e.g.*, 119 Cong. Rec. at 24,801 (Statements of Sen. Burdick and Sen. Williams).  But what the Department does not seem to realize, however, is that this analogy actually supports plaintiffs' position.  Babysitters—good ones, at least—do not simply sit and stare at their charges, ready to call for assistance if something should go wrong.  And their duties can extend far beyond playing games or making conversation.  Babysitters provide care— assistance with activities of daily living and instrumental activities of daily living—to the extent the children they are watching are unable to care for themselves.  A babysitter, particularly one sitting for an infant or toddler, often is responsible for feeding, bathing, and changing the clothes and diapers of the child.  Babysitters regularly prepare food for

---

contrary to the statute," *Chevron*, 467 U.S. at 844, to define the "companionship services" term of this statute as including such a stringent limitation on a companion's ability to provide care.

[6] The Department, apparently, chose 20 percent as the limit because it had used that number as a limit in other FLSA regulations, 78 Fed. Reg. 60,467-68—not because of any relationship to clients' needs or the way services are provided.

their charges and drive them to places they cannot reach on their own. If the Department

believes otherwise, its staff needs to spend some more time with children!

It is important to note, as I did in my previous Opinion, that Congress did *not* limit

the companionship services exemption to services provided on a "casual basis," as it did

for its babysitter exemption within the very same statutory provision. 29 U.S.C.

§ 213(a)(15); *see* Dec. 22 Op. at 13. Indeed, when discussing the companionship services

exemption in particular, legislators expressed their concern with the ability of their

constituents to pay for in-home care provided on a regular basis.[7] 119 Cong. Rec.

24,797-98 (1973) (statements of Sen. Dominick and Sen. Johnston).

Home care workers have been providing care to the elderly and disabled, under the

umbrella of the companionship services exemption, since the enactment of the 1974

Amendments. Here, I am once again faced with a long-standing regulation left

untouched by Congress for 40 years. *See* Dec. 22 Op. at 16. Congress has made

numerous changes to the FLSA exemptions—including, notably, the addition of a

---

[7] The Department focuses on Congress's goal in expanding FLSA protections to domestic employees via the 1974 Amendments, but for the most part ignores the reality that Congress also had reasons for exempting certain categories of workers from that expansion. Defs.' Opp'n at 18-19. Defendants emphasize a statement in the Congressional committee reports to argue that "Congress sought to 'include within the coverage of the Act *all* employees whose vocation is domestic service.'" Defs.' Opp'n at 18-19 (quoting Senate Report No. 93-690, p. 20 (1974)) (emphasis added by defendants); *see also* House Report No. 93-913 (1974). They appear to believe that Congress made its decisions where to draw exemption lines by looking only at whether the workers at the time considered their work to be their vocation, rather than at what type of work was being done by each category of employee and the circumstances of their employment. That cannot be true, when one of the categories Congress exempted was *live-in* domestic workers! It strains credulity to contend that Congress believed that all workers who reside in the household in which they are employed do not consider their work to be their vocation. And although Congress did observe that "[p]eople who will be employed in the excluded [casual babysitting and companionship services] categories are not regular bread-winners or responsible for their families' support," Senate Rep. No. 93-690, p. 20 (1974); *see also* House Report No. 93-913, such an observation regarding the then-current state of the labor market indicates neither why Congress exempted companionship providers, nor that a future change in the state of the industry would warrant a change in what services an exempt companion may provide.

11

definition of "fire protection activities" into the statute at 29 U.S.C. § 203(y), specifically to clarify the meaning of the overtime exemption codified at 29 U.S.C. § 213(b)(20).  Act of Dec. 9, 1999, Pub. L. No. 106-151, § 1, 113 Stat. 1731 ("An Act To amend the Fair Labor Standards Act of 1938 to clarify the overtime exemption for employees engaged in fire protection activities.").  But Congress has not shown one iota of interest in cabining the definition of companionship services, which has been interpreted by the Department the same way for 40 years.  Indeed, not a single one of the six bills introduced in Congress after the Supreme Court's decision in *Coke* addressed the definition of "companionship services."  *See* Dec. 22 Op. at 5-6, 17.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'"  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974)).

Thus, I cannot help but conclude that Congress's intent in 1974 to exempt from minimum and overtime wage requirements domestic workers providing services, including care to the elderly and disabled, is still as clear today as it was forty years ago. Here, yet again, the Department is trying to do through regulation what must be done through legislation.  *See* Dec. 22 Op. at 17 and n.12.  And, therefore, it too must be vacated.

12

## CONCLUSION

Millions of American families each day struggle financially to care for their loved ones who are either too elderly or infirm to care for themselves.  Congress is now, and has been, keenly aware of that struggle for many decades.  Indeed, as the baby-boomer generation gets older, that struggle will be shared by an ever-increasing number of families.  The exemption Congress has provided third-party employers and individual families with respect to minimum and overtime wages has been, and is, a central component of Congress's effort to insure that as many of those families as possible will be able to survive that struggle.  While the Department of Labor's concern about the wages of home care providers is understandable, Congress is the appropriate forum in which to debate and weigh the competing financial interests in this very complex issue affecting so many families.  Redefining a 40-year-old exemption out of existence may be satisfyingly efficient to the Department of Labor, but it strikes at the heart of the balance of power our Founding Fathers intended to rest in the hands of those who must face the electorate on a regular basis.

Thus, for all of the foregoing reasons, plaintiffs' motion for summary judgment [Dkt. #23] is GRANTED.  Accordingly, the United States Department of Labor's regulation defining "companionship services," promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.6, is hereby VACATED.  An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

13

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOME CARE ASSOCIATION OF AMERICA, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 14-cv-967 (RJL) ) |
| DAVID WEIL, *et al.*, | ) **FILED** ) |
| Defendants. | ) JAN 1 4 2015 |

**ORDER**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

For the reasons set forth in the Memorandum Opinion entered this date, it is this

14ᵗʰ day of January, 2015, hereby

**ORDERED** that plaintiffs' motion for summary judgment [Dkt. #23] is

**GRANTED**; and it is further

**ORDERED** that the Department of Labor's regulation defining "companionship

services," promulgated in 78 Fed. Reg. 60,557 and to be codified at 29 C.F.R. § 552.6, is

**VACATED**.

RICHARD J. LEON
United States District Judge